Eric B. Fastiff (SBN 182260)
efastiff@lchb.com
Lin Y. Chan (SBN 255027)
lchan@lchb.com
LIEFF CABRASER HEIMANN &
 BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Dan Drachler (*pro hac vice* forthcoming)
ddrachler@zsz.com
ZWERLING, SCHACHTER & ZWERLING, LLP
1904 Third Avenue, Suite 1030
Seattle, Washington 98101
Telephone: (206) 223-2053
Facsimile: (206) 343-9636

*Counsel for Plaintiff Norman Goldblatt
and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMAN GOLDBLATT, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DAR TSON "DAVID" SHEN; SYNTA TECHNOLOGY CORPORATION OF TAIWAN; SUZHOU SYNTA OPTICAL TECHNOLOGY CO., LTD.; SYNTA CANADA INTERNATIONAL ENTERPRISES LTD.; NANTONG SCHMIDT OPTO-ELECTRICAL TECHNOLOGY CO. LTD.; SW TECHNOLOGY CORPORATION; SKY-WATCHER USA; PACIFIC TELESCOPE CORP.; CELESTRON ACQUISITION, LLC; OLIVON MANUFACTURING CO. LTD.; OLIVON USA, LLC; and NINGBO SUNNY ELECTRONIC CO., LTD.,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1

## **TABLE OF CONTENTS**

2

TABLE OF CONTENTS ................................................................................................... 2

3

NATURE OF THE CASE ................................................................................................. 1

JURISDICTION AND VENUE ........................................................................................ 3

4

THE PARTIES ................................................................................................................... 5

5

    A.    Plaintiff ............................................................................................................ 5

6

    B.    Defendants ...................................................................................................... 5

7

        1.    The Synta Defendants ...................................................................... 5

        2.    The Sunny Defendants ..................................................................... 8

8

    C.    Agents and Co-Conspirators ......................................................................... 8

9

        1.    The Synta Co-Conspirators ............................................................. 9

10

        2.    The Sunny Co-Conspirators ............................................................ 9

11

    D.    The Defendants and Co-Conspirators Engaged in Collusive Conduct on Behalf of Entire Corporate Families. ........................................................... 10

12

FACTUAL ALLEGATIONS .......................................................................................... 11

13

    A.    The Consumer Telescope Markets ............................................................... 11

14

        1.    The Manufacturing Market ............................................................ 11

15

        2.    The Distribution Market................................................................. 12

16

    B.    The Federal Trade Commission's Actions in the Consumer Telescope Market ........................................................................................................... 13

17

    C.    The Defendants and Co-Conspirators Monopolized Different Products in the Consumer Telescope Market................................................................... 14

18

    D.    The Defendants and Co-Conspirators Colluded on Sunny's Acquisition of Meade. .......................................................................................................... 14

19

    E.    Defendants and Co-Conspirators Conspired to Interfere with Orion's Acquisition of the Hayneedle Assets. ......................................................... 16

20

    F.    Defendants' Anticompetitive Conduct and Conspiracy to Fix Prices ................ 16

21

    G.    The Structure and Characteristics of the Consumer Telescope Market Plausibly Support the Alleged Conspiracy. ............................................... 20

22

23

        1.    The Consumer Telescope Manufacturing and Distribution Markets Have High Barriers to Entry. ...................................................... 20

24

        2.    The Consumer Telescope Manufacturing and Distribution Markets Are Highly Concentrated. ............................................................. 21

25

26

        3.    There Is Inelasticity of Demand for Consumer Telescopes. .................... 22

27

CLASS ACTION ALLEGATIONS ............................................................................... 22

28

EFFECTS OF THE CONSPIRACY AND ANTITRUST INJURY ........................................... 31

PLAINTIFF'S CLAIMS ARE TIMELY. ................................................................................. 32

    A.    The Statute of Limitations Did Not Begin to Run Because Plaintiff Did Not and Could Not Discover His Claims. ............................................................ 32

    B.    Fraudulent Concealment Tolled the Statute of Limitations. ............................... 32

CAUSES OF ACTION ........................................................................................................ 34

FIRST CLAIM FOR RELIEF Violations of Section 1 of the Sherman Act (15 U.S.C. § 1) (on behalf of Plaintiff and the Nationwide Injunctive Class) ........................................... 34

SECOND CLAIM FOR RELIEF Violations of Section 2 of the Sherman Act (15 U.S.C. § 2) Monopolization (on behalf of Plaintiff and the Nationwide Injunctive Class) ......... 35

THIRD CLAIM FOR RELIEF Violation of Section 2 of the Sherman Act (15 U.S.C. § 2) Attempted Monopolization (on behalf of Plaintiff and the Nationwide Injunctive Class) ............................................................................................................................... 36

FOURTH CLAIM FOR RELIEF Violation of Section 7 of the Clayton Act (15 U.S.C. § 18) (on behalf of Plaintiff and the Nationwide Injunctive Class) ................................. 38

FIFTH CLAIM FOR RELIEF Violation of the State Antitrust Laws (on behalf of Plaintiff and the Damages Class or, Alternatively, on Behalf of the State Damages Classes) ...... 39

SIXITH CLAIM FOR RELIEF Violations of State Consumer Protection Laws (on behalf of Plaintiff and the Damages Class or, Alternatively, on Behalf of the State Damages Classes) ........................................................................................................ 57

SEVENTH CLAIM FOR RELIEF Unjust Enrichment (on behalf of Plaintiff and the Damages Class or, Alternatively, on Behalf of the State Damages Classes) .................. 75

PRAYER FOR RELIEF ....................................................................................................... 76

JURY DEMAND ................................................................................................................. 77

Plaintiff Norman Goldblatt, by and through his attorneys, on information and belief, brings this action on behalf of himself and all others similarly situated against Defendants Dar Tson "David" Shen, Synta Technology Corporation of Taiwan, Suzhou Synta Optical Technology Co., Ltd., Synta Canada International Enterprises Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., SW Technology Corporation, Sky-Watcher USA, Pacific Telescope Corp., Celestron Acquisition, LLC, Olivon Manufacturing Co. Ltd., Olivon USA, LLC, and Ningbo Sunny Electronic Co., Ltd. (collectively, "Defendants"). The foregoing Defendants and Co-Conspirators named herein engaged in an unlawful conspiracy to fix prices, to allocate the market and customers, and to monopolize the consumer telescope market in the United States.

## **NATURE OF THE CASE**

1.      Astronomy is the scientific study of celestial objects and phenomena that originate outside the Earth's atmosphere. It is one of the oldest and most popular hobbies in the United States. Estimates of the total number of amateur astronomers in the United States range from a quarter to a half million people. Amateur astronomers have contributed to many important astronomical discoveries, including the discovery of a comet that hit Jupiter leaving a massive scar, a group of rare galaxies called the "Green Peas," and the Hale-Bopp comet, one of the most distant comets ever spotted. In order to make these discoveries, amateur astronomers often rely on telescopes manufactured by Synta and Ningbo Sunny.

2.      Unfortunately, while fixing their gaze on the stars, these astronomers did not realize that the manufacturers and distributors of their telescopes were engaged in price fixing, market allocation, and other anticompetitive activity with the purpose and effect of monopolizing the consumer telescope manufacturing and distribution markets. As a result, purchasers of consumer telescopes have been illegally overcharged hundreds of millions of dollars for telescopes since at least 2005.

3.      Synta and Sunny together manufacture over 80% of all consumer telescopes imported into the United States. Instead of competing, Synta and Sunny agreed which products their companies will produce and what prices to charge for such products. They have used their

unlawful cooperation and dominance over telescope supply to enable their subsidiaries to take over the United States distribution market.

4.      In addition to colluding on pricing, Defendants and their Co-Conspirators operated their businesses as a conglomerate for their mutual benefit. For example, when the Federal Trade Commission blocked Celestron from acquiring its competitor Meade Instrument Corp., Celestron made a deal for which it agreed to help Ningbo Sunny acquire Meade. In exchange, Ningbo Sunny lied to the FTC about Celestron's involvement, provided Celestron and Synta access to Meade's intellectual property and manufacturing techniques, and ensured that Meade no longer competed against Celestron. At the same time, Ningbo Sunny funneled its customers' trade secrets to Celestron and Synta to help Celestron adjust its pricing and marketing strategies.

5.      Defendants conspired with their Co-Conspirators to fix the prices of telescopes, to allocate the manufacturing and sales of telescopes, to unlawfully acquire assets, and to dominate and monopolize telescope supply and distribution. The anticompetitive acts include, without limitation: (i) fixing the prices of telescopes and dividing the market; (ii) helping Ningbo Sunny acquire and operate Celestron's horizontal competitor, Meade; (iii) obtaining and sharing non-public information about Meade's intellectual property, business plans, and product pricing; and (iv) obtaining and sharing non-public, sensitive information about its competitors' business, including intellectual property, business plans, and product pricing with their Co-Conspirators; and (v) aiding and abetting their Co-Conspirators' coordinated action to maintain power.

6.      Defendants' concealment of their conspiracy from consumers ended no earlier than September 2019, when documents were unsealed in an antitrust proceeding brought by Optronic Technologies, Inc. ("Orion"), in which defendants and their co-conspirators were held liable for $52,000,000.

7.      As a direct result of Defendants' conspiracy, Plaintiff and the Classes (defined *infra*) paid artificially inflated prices for consumer telescopes during the period from and including January 1, 2005 through the present ("Class Period") and have thereby suffered antitrust injury to their property.

CLASS ACTION COMPLAINT

1  **JURISDICTION AND VENUE**

2  8.    This Court has jurisdiction under Section 16 of the Clayton Act, 15 U.S.C. § 26, to

3  enter equitable and injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

4  Plaintiff, on behalf of himself and all others similarly situated, also asserts claims for damages

5  pursuant to state antitrust, unfair competition, consumer protection, and unjust enrichment laws,

6  and seeks to obtain restitution, recover damages, and secure other relief against the Defendants

7  for violations of those state laws.

8  9.    This Court also has jurisdiction over the instant matter pursuant to 28 U.S.C. §

9  1332(d) and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, which

10  vest original jurisdiction in the district courts of the United States for any multi-state class action

11  where the aggregate amount in controversy exceeds $5 million and where the citizenship of any

12  member of the Classes is different from that of any defendant. The $5 million amount-in-

13  controversy and diverse citizenship requirements of CAFA are satisfied in this case. This Court

14  has personal jurisdiction over each defendant because, *inter alia*, each defendant: (a) transacted

15  business throughout the United States, including in this district; (b) participated in the sale and

16  distribution of consumer telescopes throughout the United States, including in this district; (c) had

17  substantial contacts with the United States, including in this district; and/or (d) was engaged in an

18  illegal conspiracy that was directed at and had the intended effect of causing injury to persons

19  residing in, located in, or doing business throughout the United States, including in this district.

20  10.    Defendants engaged in conduct both inside and outside the United States that

21  caused direct, substantial and reasonably foreseeable and intended anti-competitive effects upon

22  interstate commerce within the United States.

23  11.    The activities of the Defendants and their Co-Conspirators were within the flow of,

24  were intended to, and did have, a substantial effect on interstate commerce of the United States.

25  Defendants' products are sold in the flow of interstate commerce. This Court has personal

26  jurisdiction over each defendant because each defendant either directly or through the ownership

27  and/or control of their subsidiaries: (a) transacted business throughout the United States,

28  including in this district; (b) participated in the sale and distribution of telescopes throughout the

United States, including in this district; (c) had substantial aggregate contacts with the United States, including in this district; and/or (d) was engaged in an illegal conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this district. Because Defendants conduct business throughout the United States, including in this jurisdiction, they have purposefully availed themselves of the laws of the United States. Furthermore, Celestron Acquisition, LLC and Sky-Watcher USA are headquartered in California, and co-conspirator Meade Instruments Corp. is headquartered in California.

12.     Defendants and Co-Conspirators' conduct directly targeted the United States consumer telescope market and were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States. Defendants' telescopes are sold in the flow of United States interstate commerce.

13.     The telescopes that Defendants and Co-Conspirators manufactured abroad and sold in the United States are goods brought into the United States for sale, and therefore constitute import commerce. The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury to Plaintiff and members of the Classes in the United States.

14.     Venue is appropriate in this district under 28 U.S.C. § 1391(b) and (c). During the Class Period many of the Defendants transacted business, were found, or had agents in this district and because a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

15.     Intra-District Assignment:  Assignment to the San Jose division of the Court is proper pursuant to Northern District of California Local Rule 3-2(c) because a substantial part of the events giving rise to the claims arose in this district.  Plaintiff's transaction from which this case arises occurred in Santa Clara County.  Defendants' illegal conspiracy included acts occurring in or directed at Santa Clara County, and Defendants marketed and/or sold telescopes throughout the district during the Class Period.  Orion, a target of Defendants' conduct, is headquartered in Santa Cruz County.

CLASS ACTION COMPLAINT

## THE PARTIES

**A.     Plaintiff**

16.     Plaintiff Norman Goldblatt is a California resident who purchased in California at least two telescopes indirectly from Defendants or Co-Conspirators during the Class Period. Mr. Goldblatt is a physicist, amateur astronomer, and consumer of telescopes and accessories.

**B.     Defendants**

17.     As indicated below, the Defendants and Co-Conspirators shared certain executives that facilitated the conspiracy.

18.     Each of the defendant corporate families (Synta and Sunny) operates not as separate corporate entities but as single, integrated enterprises. Each of the parent and/or foreign entities named in this case operate a hierarchical corporate structure wherein they treat subsidiaries as mere distribution and sales offices of the corporate parent rather than separate entities under their own control.

19.     Each corporate parent alleged herein also coordinates and manages the finances and meetings between officers from each of the subsidiaries to facilitate an integrated enterprise to link the various supply chains to the corporate families' customers. The parent defendants control the finances, policies, and business practices of their various subsidiaries, including the United States subsidiaries.

### 1.     The Synta Defendants

20.     Defendant Dar Tson "David" Shen is the founder, owner, and chairman of the Synta Defendants and Synta Co-Conspirators (*see infra*). These companies are affiliates of each other. On information and belief, Mr. Shen and his family, including Jean Shen and Sylvia Shen, controlled these entities during the Class Period. Mr. Shen regularly enters this district to meet with United States distributors of Synta products. Even though Mr. Shen founded and oversees Synta, he was concurrently an officer of Ningbo Sunny from 2001 to 2005—a direct, horizontal competitor. He held a 26% ownership interest in Ningbo Sunny until 2005 when Synta acquired Celestron, at which point he transferred his shares to his sister, Dong Yun Xue, who continues to hold them.

CLASS ACTION COMPLAINT

21.     Defendant Synta Technology Corporation of Taiwan ("Synta Technology") is headquartered in Taiwan. Together with its subsidiaries and affiliates, it has sold telescopes into the United States, Canada, and the European Union during the Class Period. Synta Technology has sold telescopes that were shipped into the United States, including into this district. Its address in Taiwan is No. 89 Lane 4, Chia-An W. Rd., Lung-Tan Tao-Yuan, Taiwan, R.O.C. Synta Technology is a member of Defendants' anticompetitive conspiracy.

22.     Defendant Suzhou Synta Optical Technology Co., Ltd. ("Suzhou Synta") is located in Suzhou, China. Suzhou Synta is owned and/or controlled by David Shen and his family. Suzhou Synta has manufactured telescopes that were sold into the Northern District of California during the Class Period. Suzhou Synta's principal place of business is at No. 65, Yushan Road, New District, 215011 Suzhou, Jiangsu, China. Suzhou Synta is a manufacturing subsidiary of Synta Technology. During the Class Period, Suzhou Synta—directly and/or through its affiliates—manufactured, marketed and/or sold telescopes in the United States, including in this district.

23.     Defendant Synta Canada International Enterprises Ltd. ("Synta Canada") is a British Columbia company with its principal place of business at 4035 Williams Road, Richmond, British Columbia V7E 1J7, Canada. On information and belief, Synta Canada manufactured, marketed and/or sold telescopes that were sold and purchased throughout the United States, including in this district during the Class Period.

24.     Defendant Nantong Schmidt Opto-Electrical Technology Co. Ltd. ("Nantong Synta") is located in Nantong, China. Nantong Synta is owned and/or controlled by David Shen. Nantong Synta has manufactured telescopes that were sold in the United States, including in this district, during the Class Period. Its principal place of business is at No. 399 West Zhongshan Rd., Rugao City, Jiangsu China.

25.     Defendant SW Technology Corporation ("SW Technology"), a Delaware corporation with its principal place of business at 2835 Columbia Street, Torrance, California 90503. SW Technology is a subsidiary wholly owned and/or controlled by Synta Technology. SW Technology manufactured, marketed, and/or sold telescopes that were sold and purchased

CLASS ACTION COMPLAINT

throughout the United States, including in this district, during the Class Period. On information and belief, Dar Tson Shen established SW Technology in 2005 to acquire Celestron (*see infra*) and continues to operate SW Technology as a holding company.

26.     Defendant Sky-Watcher USA is a United States company with its principal place of business at 475 Alaska Avenue, Torrance, California 90503. David Shen founded Sky-Watcher USA in the 2000s to sell telescopes manufactured by Suzhou Synta.  On information and belief, Sky-Watcher USA manufactured, marketed and/or sold telescopes throughout the United States, including in this district, during the Class Period.

27.     Defendant Pacific Telescope Corp. is a British Columbia corporation with its principal place of business at 11880 Hammersmith Way, Richmond, British Columbia V7A 5C8, Canada. Pacific Telescope Corp. was established in 1997 to sell Synta's Sky-Watcher brand of devices in Canada, and it is controlled by co-conspirator Sylvia Shen, sister of Defendant David Shen. On information and belief, Sky-Watcher Canada manufactured, marketed, and/or sold telescopes that were sold and purchased throughout the United States, including in this district, during the Class Period.

28.     Defendant Celestron Acquisition, LLC ("Celestron") is a Delaware corporation. Its principal place of business is located at 2835 Columbia Street, Torrance, California 90503. Celestron is a subsidiary and wholly owned and/or controlled by its parent, SW Technology Corporation, and an affiliate of Synta Technology. During the Class Period, Celestron manufactured, marketed, and/or sold telescopes that were sold and purchased throughout the United States, including in this district. Celestron is the largest importer and distributor of telescopes in the United States.

29.     Defendant Olivon Manufacturing Co. Ltd. ("Olivon Canada") is a British Columbia company with its principal place of business at 11880 Hammersmith Way, Suite 175, Richmond, British Columbia V7A 5C8, Canada. On information and belief, Olivon Canada manufactured, marketed, and/or sold telescopes that were sold and purchased throughout the United States, including in this district, during the Class Period.

CLASS ACTION COMPLAINT

30.     Defendant Olivon USA, LLC ("Olivon USA") is a Nevada corporation with its principal place of business at 241 Rusty Plank Avenue, Las Vegas, Nevada 89148. On information and belief, Olivon USA manufactured, marketed, and/or sold telescopes that were sold and purchased throughout the United States, including in this district, during the Class Period.

31.     Defendants Dar Tson "David" Shen, Synta Technology Corporation of Taiwan, Suzhou Synta Optical Technology Co., Ltd., Synta Canada International Enterprises Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., SW Technology Corporation, Sky-Watcher USA, Pacific Telescope Corp., Celestron Acquisition, LLC, Olivon Manufacturing Co. Ltd., and Olivon USA, LLC and co-conspirators Joseph Lupica, David Anderson, Corey Lee, Laurence Huen, Sylvia Shen, Jean Shen, and Good Advance Industries Ltd. are collectively referred to herein as "Synta."

### 2.     The Sunny Defendants

32.     Defendant Ningbo Sunny Electronic Co., Ltd. ("Ningbo Sunny") is a Chinese corporation organized and existing under the laws of China with its principal place of business at No. 199 Anshan Road, Yuyao, Zhejiang, China 315400. During the Class Period, Ningbo Sunny—directly and/or through its affiliates which it wholly owned and/or controlled, and through Celestron and other distributors—manufactured, marketed, and/or sold telescopes that were sold and purchased throughout the United States, including in this district.

33.     Defendant Ningbo Sunny Electronic Co., Ltd. and co-conspirators Wenjun "Peter" Ni, Meade Instruments Corp., and Sunny Optics Inc. are collectively referred to herein as "Sunny."

### C.     Agents and Co-Conspirators

34.     The persons and entities named as co-conspirators within this section shall be referred to collectively as "Co-Conspirators."

### 1.     The Synta Co-Conspirators

35.     Co-Conspirator Joseph Lupica is the former CEO of Celestron. He subsequently became the CEO of Celestron's horizontal competitor Meade. Mr. Lupica resides in California. Joseph Lupica participated in, planned, and carried out the conspiracy alleged herein.

36.     Co-Conspirator Dave Anderson, another former CEO of Celestron, succeeded Joseph Lupica and participated in the conspiracy alleged herein. On information and belief, Mr. Anderson now resides in Minnesota.

37.     Co-Conspirator Corey Lee is the current CEO of Celestron and resides in California. Mr. Lee participated in the conspiracy alleged herein.

38.     Co-Conspirator Laurence Huen is or was a board member of Celestron and an advisor to David Shen. Mr. Huen participated in the conspiracy herein, acting as a conduit of information between horizontal competitors Synta and Sunny.

39.     Co-Conspirator Sylvia Shen, one of David Shen's sisters, is a director of Pacific Telescope Corp., a member of Celestron's executive committee and controlled SW Technology. She participated in the conspiracy alleged herein.

40.     Co-Conspirator Jean Shen is also David Shen's sister and exercises control over Olivon Canada and Olivon USA. Ms. Shen participated in the conspiracy alleged herein.

41.     Co-Conspirator Good Advance Industries Ltd. ("Good Advance") is a Taiwanese corporation. Its principal place of business is located at No. 89 Lane 4 Chia-An W. Road, Lung-Tan, Taoyuan, Taiwan, R.O.C. On information and belief, Good Advance manufactured, marketed, and/or sold telescopes that were sold and purchased throughout the United States, including in this district, during the Class Period.

### 2.     The Sunny Co-Conspirators

42.     Co-Conspirator Wenjun "Peter" Ni is the founder, owner, and CEO of Ningbo Sunny. On information and belief, Mr. Ni directly or indirectly owns and controls each of the Ningbo Sunny companies described below. Mr. Ni coordinated, led, entered, and/or authorized the collusive agreements at issue between Ningbo Sunny and the Synta defendants and co-conspirators.

43.    Co-Conspirator Meade Instruments Corp. ("Meade") is a Delaware corporation with its principal place of business at 27 Hubble, Irvine, California 92618. Meade is a subsidiary and wholly owned and/or controlled by its parent, Ningbo Sunny. During the Class Period, Meade manufactured, marketed, and/or sold telescopes that were sold and purchased throughout the United States, including in this district. On information and belief, at all times during the Class Period, Meade's activities in the United States were under the control and direction of its Ningbo Sunny. Meade Instruments Corp. was not named as a defendant herein because it has filed for bankruptcy and doing so would violate the bankruptcy stay (*see* Case No. 8:19-bk-14714-CB (C.D. Cal.)).

44.    Co-Conspirator Sunny Optics Inc. ("Sunny Optics") is a Delaware corporation.  It was formed for the purpose of merging with Meade. Upon information and belief, Sunny Optics is owned and controlled by Peter Ni. Like Meade, Sunny Optics Inc. was not named as a defendant herein because it has filed for bankruptcy and doing so would violate the bankruptcy stay (*see* Case No. 8:19-bk-14711 (C.D. Cal.)).

**D.    The Defendants and Co-Conspirators Engaged in Collusive Conduct on Behalf of Entire Corporate Families.**

45.    Plaintiff alleges generally which corporate family was represented in a particular meeting or communication because, in meetings and discussions between Defendants and Co-Conspirators, the individual participants did not distinguish between entities within a particular corporate family:

    a.  Individual defendants and co-conspirators referred to themselves or others merely as "Synta," "Celestron," "Sunny," or "Meade."

    b.  Officers from Defendants attended the conspiratorial meetings on behalf of their entire corporate families, including their respective United States subsidiaries.

    c.  Further, individual participants in the conspiratorial meetings and discussions did not always know the specific corporate affiliation of their counterparts.

46.     For example, Ningbo Sunny's founder, owner, and CEO Peter Ni emailed Celestron's former CEO Dave Anderson and Celestron's Board members Laurence Huen, Mr. Chen and Sylvia Shen, writing, "But the premise of this case is CELESTRON/SYNTA should be provided the financial support to SUNNY" and "[a]t present, Meade has already started to borrow money from East West Bank by offering guarantees from sunny."

47.     Additionally, former CEO of Celestron and Meade, Joe Lupica, emailed Sunny Optics and Meade, "On the other hand if we take advantage of the strong relationships among Sunny, Synta, Celestron and Meade (under Peter's ownership) *we can quickly turn the company around and the four companies can dominate the telescope industry*" (emphasis added).

48.     In sum, the foreign-based Defendants and Co-Conspirators sell directly to the United States and operate their telescope businesses as a single global enterprise through their subsidiaries and affiliates in the United States and North America generally.

## FACTUAL ALLEGATIONS

**A.      The Consumer Telescope Markets**

49.     A telescope is an optical instrument used to view distant objects.

50.     The global market for consumer telescopes is $250 million to $400 million annually. Consumer telescopes generally do not include advanced telescopes that are found at observatories and universities. The United States is the largest or one of the largest markets for consumer telescopes.

51.     Over 80% of the consumer telescopes sold in the United States are manufactured by either Synta or Sunny.

52.     Within the broader consumer telescope market, there are two relevant markets: the manufacturing market and the distribution market.

**1.      The Manufacturing Market**

53.     The first relevant market is the market for manufacturing consumer telescopes and telescope accessories for import into the United States. The geographic scope of this market is global. Sunny and Synta together possess 80% of that market.

CLASS ACTION COMPLAINT

54. Sunny and Synta are each able to manufacture all types of consumer telescopes. However, Sunny and Synta have an illegal agreement or understanding that Synta only manufactures higher-end products while Sunny manufactures lower-end products.

55. Pursuant to that unlawful agreement or understanding, Synta will not manufacture or respond to a request for quotation ("RFQ") for products offered by Sunny and vice versa.

56. Because of their understanding, Sunny and Synta are able to and do in fact charge supracompetitive prices, restrict supply, and engage in other anticompetitive conduct that artificially increases the prices of the telescopes paid by United States consumers from the Defendants and their subsidiaries.

**2.   The Distribution Market**

57. In addition to the manufacturing market, the second relevant market is a post-manufacturing, distribution market within the United States. Sunny and Synta possess over 80% of the consumer telescope market in the United States by manufacturing, marketing and/or selling over 80% of consumer telescopes in the United States.

58. In 2005, Synta acquired telescope distributor Celestron as its wholly owned subsidiary. Celestron, through Defendants' and Co-Conspirators' collusion, became the dominate telescope distributor in the United States. With Synta's help, Sunny subsequently acquired telescope distributor Meade. Synta and Sunny manufacture, market, and/or sell their telescopes to distributors (including their respective wholly owned subsidiaries Celestron and Meade).  These distributors then sell the telescopes online, in stores, and through dealers to astronomy enthusiasts in the United States. Telescopes sold by Celestron and Meade account for the vast majority of consumer telescopes sold in the United States.

59. Together, Synta and Sunny dominate the telescope manufacturing and distribution of consumer telescopes in the United States:

1
2
3
4
5
6
7
8
9
10
11
12
13



**B.**    **The Federal Trade Commission's Actions in the Consumer Telescope Market**

60.    The consumer telescope market has long drawn the attention of federal antitrust regulators. Almost three decades ago, the Federal Trade Commission ("FTC") investigated a proposed joint venture between co-conspirators Meade and Celestron that it charged would have created a virtual monopoly in the manufacture and sale of certain telescopes. The United States District Court for the District of Columbia granted the FTC's motion for a preliminary injunction barring the acquisition of any assets or other interest in Celestron International by Harbour Group, Meade's parent) and further barring Diethelm (Celestron's parent) from acquiring any assets or other interest in Meade.  In 1991, the FTC gave final approval to a consent agreement that settled those charges. The agreement required, for ten years, the former parents of Meade and Celestron (Harbour Group Investments, L.P., and Diethelm Holding Ltd. respectively) to obtain FTC approval before acquiring any company that manufactures or sells certain telescopes in the United States.

61.    The FTC again investigated the consumer telescope industry over a decade later. In May 2002, Meade, at the time the leading manufacturer of performance telescopes and

CLASS ACTION COMPLAINT

Schmidt-Cassegrain telescopes in the United States, attempted to acquire Celestron. The parties abandoned the deal after the FTC authorized staff to seek a temporary restraining order and a preliminary injunction in federal district court to stop any attempt by Meade to purchase all, or certain assets, of Tasco Holdings, Inc.'s Celestron International, the second largest performance telescope provider in the United States and the only other supplier of Schmidt-Cassegrain telescopes. According to the FTC's complaint, Meade's acquisition of Celestron assets would adversely impact the performance telescope market by eliminating substantial actual competition between the two companies and by creating a monopoly in the market for telescopes.

C.     **The Defendants and Co-Conspirators Monopolized Different Products in the Consumer Telescope Market.**

62.     Synta and Sunny effectively divided the consumer telescope market. As alleged above, Synta and Sunny agreed that Synta would manufacture higher-end products and Sunny would manufacture lower-end products.

63.     Synta and Sunny also agreed that Synta would not manufacture or respond to an RFQ for products manufactured by Sunny and vice versa. Both adhered to their agreements. As a result of their respective market shares, agreements not to compete, and significant barriers to entry (*see infra*), Synta and Sunny each has, and has maintained, an effective monopoly over the respective products that each sells. Sunny and Synta therefore can and do limit supply, charge supracompetitive prices, and engage in other anticompetitive conduct that artificially increases the prices of the telescopes that they respectively manufacture, market and/or sell.

D.     **The Defendants and Co-Conspirators Colluded on Sunny's Acquisition of Meade.**

64.     For many years, Meade was the leading United States manufacturer and supplier of high- and low-end telescopes. Meade owned highly valued patents and a manufacturing facility in Mexico. One of these patents was for "GoTo technology," a telescope mount and related software that can automatically point a telescope at astronomical objects that the user selects. GoTo technology was also the subject of extensive litigation between Meade and Celestron.

65.     When Meade was offered for sale in 2013, a small telescope manufacturer (Jinghua Optical Co. Ltd.) tried to purchase it. Jinghua was a competitor of Sunny and Synta. If

Jinghua had succeeded in purchasing Meade, it would have gained critical manufacturing knowledge about high-end telescopes and accessories, as well as Meade's patent portfolio, permitting it to better compete with Sunny and Synta in both the manufacturing and distribution markets.

66.     Sunny and Synta colluded to prevent Jinghua's acquisition of Meade, which would have diversified the manufacturing market, preserved an independent distributor, and increased competition in the telescope industry.

67.     The FTC had blocked Meade and Celestron from merging in 1991 and 2002. Because Synta owned Celestron, Synta could not acquire Meade directly. As a result, Sunny's Mr. Ni and Synta's Mr. Shen agreed that if Sunny moved to acquire Meade, Celestron and Synta would provide financial and other assistance to complete the acquisition. This was explained in an email from Mr. Ni to co-conspirator Anderson (Celestron's then-CEO) and Celestron board members Huen, Chen and Sylvia Shen, asking Celestron and Synta to continue providing financial support to Sunny.

68.     Synta/Celestron made substantial payments and loans to Ningbo Sunny to facilitate the Meade acquisition. These payments were documented, for example, in an accounting provided by Celestron's CFO, Paul Roth.

69.     On information and belief, in exchange for Synta's support, (1) Sunny concealed Synta's and Celestron's involvement or assistance in its acquisition of Meade from the FTC; (2) Sunny provided Celestron and Synta with access to Meade's intellectual property rights, thereby ensuring that Celestron no longer needed to compete with Meade; and (3) Sunny shared its customers' data—including pricing data—with Celestron, thus enabling them to coordinate their prices and strategies. This cooperation fortified Synta and Sunny's respective monopoly in the United States for their products.

70.     Synta and Sunny's combination and conspiracy eliminated their competitor, Meade, in the distribution market, increased market concentration, and solidified their monopoly power. In short, Sunny's acquisition of Meade decreased competition, raised the already-high barriers to entry, and tended to create monopolies for Synta and Sunny in the United States.

71.     After Ningbo Sunny acquired Meade, co-conspirators Shen and Huen continued to provide advice and assistance to Ningbo Sunny and Meade, which should have been its horizontal competitors. Co-Conspirators Shen and Huen met with Mr. Ni about manufacturing and other issues and toured Meade's facilities. Further evidence of Synta's collusive relationship with Ningbo Sunny, Mr. Huen (Celestron Board Member and advisor to Synta's Mr. Shen) also instructed Ningbo Sunny to remove Meade's CEO and to replace him with Celestron's former CEO, Mr. Lupica.

### E.     Defendants and Co-Conspirators Conspired to Interfere with Orion's Acquisition of the Hayneedle Assets.

72.     Synta and Sunny conspired to prevent Orion from acquiring various valuable assets that would have threatened their monopoly. In 2014, independent telescope distributor and retailer Orion attempted to acquire certain assets, including web domains like "telescopes.com," from online retailer Hayneedle ("Hayneedle Assets"). The Defendants and Co-Conspirators used their market power to fix credit terms to prevent Orion from acquiring the Hayneedle Assets; they cut off Orion's credit when they learned that Orion sought to acquire these assets.

73.     On May 12, 2014, Orion sent a letter of intent to Hayneedle stating that Orion sought to purchase the Hayneedle Assets. Synta subsequently sent Orion's CEO, Peter Moreo, an email on June 14, 2014 threatening to end Orion's credit, stating, "if Orion really buys Hayneedle, this will be the beginning of hazard, we could not trust Orion's credit any more." Synta then forwarded this email threat to Sunny and requested that Sunny also withdraw Orion's line of credit. Sunny then sent Orion an email nearly identical to Synta's email. With its supplier credit cut off, Orion could not move forward with the asset acquisition. Synta and Sunny therefore sabotaged Orion's purchase of the Hayneedle Assets that would have allowed Orion to better compete with them.

### F.     Defendants' Anticompetitive Conduct and Conspiracy to Fix Prices

74.     In the *Orion Litigation*, evidence showed (and a jury found) that the defendants fixed the prices for consumer telescopes, allocated the market thereof, illegally acquired assets, and unlawfully monopolized and/or attempted to monopolize the telescope supply and

distribution markets. They also used cooperation and dominance in the consumer telescope manufacturing market to take over of the distribution market.

75.     Through these activities, the Sunny and Synta corporate families illegally combined and conspired with each other instead of competing against one another and enabled Celestron to dominate the consumer telescope distribution market.

76.     Examples of the Defendants and Co-Conspirators' conspiratorial conduct in the consumer telescope manufacturing and distribution market include, but are not limited to:

     a.   Regarding Synta and Sunny's conspiracy for Sunny to acquire Meade, Sunny's Mr. Ni confirmed to Celestron's (owned by Synta) then-CEO David Anderson and directors, David Shen, Laurence Huen, Jack Chen, and Sylvia Shen, that Sunny would purchase Meade to prevent JOC (Jinghua) from doing so per the parties' discussion and indicated that Celestron and Synta should provide financial support to Sunny.

     b.   Following trial in the Orion Litigation, the jury found that Sunny and Synta conspired to acquire Meade. Synta made substantial payments and loans to Sunny to help Sunny acquire Meade.

     c.   Additionally, Defendants and Co-Conspirators used its attorneys to facilitate the conspiratorial conduct. Sheppard, Mullin, Richter & Hampton, LLP ("Sheppard Mullin") represented Sunny in the acquisition of Meade. The engagement letter required Sheppard Mullin to take instructions from Synta's Mr. Shen and his executives, including Celestron's Joe Lupica and Dave Anderson. Messrs. Lupica and Anderson helped Sheppard Mullin negotiate and structure the transaction and instructed it to keep Messrs. Shen and Ni updated. This type of arrangement would not occur amongst normal horizontal competitors absence collusion.

     d.   Sunny's Mr. Ni and Synta's Mr. Shen also agreed that Celestron's then-CEO, Mr. Lupica, would be transferred to Sunny and, after Sunny's acquisition of

17                                   CLASS ACTION COMPLAINT

Meade, Mr. Lupica would become Meade's CEO. He and others acted as a conduit of information between Sunny and Synta.

e. When the FTC inquired into whether Synta's Mr. Shen was involved in any way in the Meade acquisition, Sheppard Mullin partner Robert Magielnicki represented to the FTC that "except for the limited advice to Peter Ni regarding how to acquire a U.S. company, . . . David Shen has no role in the proposed acquisition of Meade" on August 22, 2013. This statement was false because Sunny's Mr. Ni and Synta's Mr. Shen had agreed before this that Mr. Shen and his companies would provide financial support to Sunny in connection with the Meade acquisition.

f. The FTC was also concerned that Synta's Mr. Shen was previously a shareholder of Ningbo Sunny. To allay the FTC's concerns, Ningbo Sunny's Mr. Ni formed Sunny Optics, Inc., the entity used to acquire Meade and become its sole shareholder. Sheppard Mullin then represented to the FTC that Ningbo Sunny had nothing to do with the Meade acquisition.

g. After Sunny acquired Meade, Sunny and Synta agreed not to compete with each other, the primary purpose of the Meade acquisition.  They confirmed this agreement in writing, including in a December 12, 2013 email thread between the entities. The email thread showed that Synta's Mr. Shen asked Sunny's Mr. Ni to reach an understanding with Celestron's then-CEO about not competing against Celestron for sales.

h. On June 13, 2014, Synta's Mr. Shen emailed Sunny's Mr. Ni and Celestron's Mr. Anderson, "The best way in the future is to divide the products and sell them into different markets to reduce conflicts."

i. Defendants and Co-Conspirators' objective was to ensure that Celestron was able to dominate the consumer telescope market in the United States. To do so, Sunny (and, as a consequence, Meade) agreed not to compete against Celestron. As Meade's then-Vice President of Sales, Victor Aniceto, explained

CLASS ACTION COMPLAINT

the strategy to Meade's then-CEO, Mr. Lupica, "Mr. Ni . . . doesn't want to disrupt Synta business. However, this promo will not be disruptive to Celestron business."

j.   In addition, Celestron's current CEO, Corey Lee, conspired with Synta and Sunny to steal competitors' key business information. Sunny sells products to Celestron's competitors. Sunny provides Celestron with material business information on such customers including its pricing of products, credit arrangements and order forecasts. For example, Sunny's James Chiu provided detailed data for several recent years of Orion orders to Celestron's CEO, Mr. Lee.

77.   Sunny and Synta also exchanged and fixed prices. They discussed and agreed on the amount to charge distributors. For example, Sunny's James Chiu and Synta's Joyce Huang discussed Sunny's prices and determined they should not be higher. Similarly, Ms. Huang informed Mr. Chiu that Ningbo Sunny's "payment terms should be the same with Suzhou [Synta.]"

78.   In addition, Defendants and Co-Conspirators' emails reveal their market allocation agreement. For example, Sunny's Vice Chairman, Mr. Chiu, emailed to Sylvia Shen about "how to avoid conflict with Celestron products." He wrote, "If the customer visits our factory and confirms their intention to cooperate with us, we will consider the strategy of separation from Celestron products or adopt different product prices to protect Celestron."

79.   Mr. Chiu of Ningbo Sunny also explained to Sylvia Shen of Synta and Sunny "will take prompt action to avoid conflict in the astronomical market" including "abandoning the small OEM customers so as to protect big customers."

80.   In sum, as Synta's Mr. Shen explained in an email to Sunny: "Director Ni will not be a competitor and is trustworthy when it comes to business."

81.   Their unlawful agreements and understandings enabled the Defendants and Co-Conspirators to coordinate and raise their prices. They avoided competing with each other's products and developed strategies to protect each other from further competition. Co-Conspirator

1    Mr. Lupica (former Celestron CEO) put it best when he wrote that they did this to collectively

2    "dominate the telescope industry."

3        82.    Synta's Mr. Shen agreed: "we do not need to wage a price war[.]"

4    **G.    The Structure and Characteristics of the Consumer Telescope Market Plausibly
            Support the Alleged Conspiracy.**

5

6        83.    The structure and other characteristics of the consumer telescope manufacturing

7    and distribution markets are conducive to collusion because these markets: (1) have high barriers

8    to entry; (2) are highly concentrated; and (3) have inelastic demand.

9            **1.    The Consumer Telescope Manufacturing and Distribution Markets Have
                    High Barriers to Entry.**

10

11       84.    A collusive arrangement that raises product prices above competitive levels would,

12   under basic economic principles, attract new entrants seeking to benefit from the

13   supracompetitive pricing. Where, however, there are significant barriers to entry, new entrants are

14   less likely to enter the market. Thus, barriers to entry help to facilitate the formation and

15   maintenance of a cartel.

16       85.    There are substantial barriers that preclude, reduce, or make more difficult, entry

17   into the telescope manufacturing and distribution markets. A new entrant into the business would

18   face costly and lengthy start-up costs, including multi-million-dollar costs associated with

19   manufacturing plants and equipment, energy, transportation, distribution, infrastructure, skilled

20   labor, and long-standing customer relationships.

21       86.    The high barriers to entry allow the Defendants and Co-Conspirators to control

22   prices and output. First, a new manufacturer of telescopes would face costly and lengthy start-up

23   costs. These costs include the development or acquisition of key intellectual property rights, such

24   as patents on software to automatically detect celestial objects demanded by amateur astronomers.

25   Meade invented this software and initially owned the patents. The Defendants and Co-

26   Conspirators colluded, however, so that Sunny could acquire Meade, thereby blocking

27   independent manufacturers that might have been able to successfully compete with Sunny or

28   Synta with the same valuable intellectual property.  Second, a new telescope manufacturer would

CLASS ACTION COMPLAINT

not have the relationships with distributors to effectively sell telescopes within the United States. There are not enough independent distributors to render independent manufacturing profitable. By contrast, Sunny and Synta are vertically integrated with the largest distributers.

87.    The fact that no new, significant consumer telescope manufacturers or distributors have entered the market in at least a decade demonstrates the high barriers to entry in the telescope manufacturing and distribution market. Furthermore, in light of Sunny's 2013 acquisition of Meade, which also had manufacturing capabilities, the number of suppliers has essentially dwindled to Sunny and Synta. Ningbo Sunny's plan to similarly dismantle Meade's manufacturing capabilities and the failure of any replacement suppliers to emerge further demonstrate that the barriers to entry into the supply market, combined with Defendants' anticompetitive conduct, have effectively foreclosed competition at the supply level.

**2.    The Consumer Telescope Manufacturing and Distribution Markets Are Highly Concentrated.**

88.    A highly concentrated market facilitates collusion and other anticompetitive practices.

89.    Here, Defendants and Co-Conspirators dominate both the consumer telescope manufacturing market globally and distribution market in the United States. As mentioned above, the Defendants and Co-Conspirators account for over 80 percent of both markets.

90.    Although the consumer telescope manufacturing market was not always highly concentrated, Sunny and Synta transformed this market by colluding to prevent competitors from entering the market and thereby making sure they are the only viable sources of consumer telescopes.

91.    Additionally, Sunny and Synta conspired to leverage their collective market power in consumer telescope manufacturing to control consumer telescope distribution. As a result, Celestron gained dominance over other distributors. When Sunny acquired Meade with the help of Synta, Defendants and Co-Conspirators removed Meade, a competitor and independent supplier from the distribution market. Neither Celestron nor Meade have seriously competed

1  since Sunny's acquisition of Meade or used their manufacturing capabilities to diversify the

2  supply of consumer telescopes.

3      92.    By fixing prices and engaging in other anticompetitive conduct, Sunny and Synta

4  consolidated their control of the distribution market. For example, Synta and Sunny would offer

5  products to Celestron at prices far below, and with far better credit terms, than those offered to

6  distributors outside their syndicate of companies, thereby raising consumer telescope prices in the

7  distribution market. With few options for consumer telescopes, Plaintiff and members of the

8  Classes paid supracompetitive prices caused by the Defendants and Co-Conspirators' collusion.

9      **3.**    **There Is Inelasticity of Demand for Consumer Telescopes.**

10      93.    "Elasticity" describes the sensitivity of supply or demand to changes in the other.

11  For example, demand is inelastic if a price increase results in little or no decline in the quantity

12  sold. In other words, customers have nowhere to turn for alternative, cheaper products of similar

13  quality and therefore continue to purchase despite the higher price.

14      94.    For a cartel to profit from raising prices above competitive levels, demand must be

15  relatively inelastic at competitive price levels. Otherwise, increased prices would result in

16  declining sales, revenues and profits as customers purchase substitute products or decide not to

17  buy altogether. Inelastic demand in a given market facilitates collusion, allowing producers to

18  raise their prices without inducing substitution and losses in sales revenue that outweigh the gains

19  from higher prices.

20      95.    Demand for consumer telescopes is highly inelastic because there are no close

21  substitutes for these products.

22      **CLASS ACTION ALLEGATIONS**

23      96.    Plaintiff brings this action on behalf of himself and all others similarly situated as

24  a class action under Federal Rule of Civil Procedure 23(a) and (b)(2), seeking equitable and

25  injunctive relief on behalf of the following class ("Nationwide Injunctive Class") under Sections

26  1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2):

27          All persons and entities residing in the United States who, during
           the period from January 1, 2005 through the present, indirectly
28          purchased for their own use and not for resale a telescope that was

    CLASS ACTION COMPLAINT

manufactured or sold by the Defendants or Co-Conspirators or any current or former affiliate thereof.

97.  Plaintiff also brings this action on behalf of himself and all others similarly situated as a nationwide class under Federal Rule of Civil Procedure 23(a) and (b)(3) seeking damages pursuant to California state antitrust, unfair competition, and consumer protection laws on behalf of the following class ("Nationwide Damages Class"):

All persons and entities residing in the United States who, during the period from January 1, 2005 through the present, indirectly purchased for their own use and not for resale a telescope that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

98.  The "Indirect Purchaser States," for purposes of this complaint, are: Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

99.  As an alternative to the Nationwide Damages Class, in the event California law is not applied to the claims of all class members for damages regardless of where they reside, or California law is not applied to Class members' claims residing in states that recognize a form of indirect purchaser cause of action, Plaintiff will seek certification of the following classes asserting claims of damages under the antitrust statutes and/or consumer protection statutes of the following thirty-three (33) jurisdictions: Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (collectively, the "State Damages Classes"):

a.  **Arizona:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Arizona during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

CLASS ACTION COMPLAINT

b. **Arkansas:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Arkansas during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

c. **California:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in California during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

d. **Connecticut:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Connecticut during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

e. **District of Columbia:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in District of Columbia during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

f. **Florida:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Florida during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

g. **Hawaii:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Hawaii during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

h. **Illinois:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Illinois during the period from January 1, 2005

CLASS ACTION COMPLAINT

through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

i. **Iowa:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Iowa during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

j. **Kansas:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Kansas during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

k. **Maine:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Maine during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

l. **Massachusetts:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Massachusetts during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

m. **Michigan:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Michigan during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

n. **Minnesota:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Minnesota during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

o. **Mississippi:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Mississippi during the period from January

25

1   1, 2005 through the present that was manufactured or sold by the Defendants

2   or Co-Conspirators, or any current or former affiliate thereof.

3   p.   **Missouri:** All persons and entities who indirectly purchased a telescope for

4   their own use and not for resale in Missouri during the period from January 1,

5   2005 through the present that was manufactured or sold by the Defendants or

6   Co-Conspirators, or any current or former affiliate thereof.

7   q.   **Montana:** All persons and entities who indirectly purchased a telescope for

8   their own use and not for resale in Montana during the period from January 1,

9   2005 through the present that was manufactured or sold by the Defendants or

10   Co-Conspirators, or any current or former affiliate thereof.

11   r.   **Nebraska:** All persons and entities who indirectly purchased a telescope for

12   their own use and not for resale in Nebraska during the period from January 1,

13   2005 through the present that was manufactured or sold by the Defendants or

14   Co-Conspirators, or any current or former affiliate thereof.

15   s.   **Nevada:** All persons and entities who indirectly purchased a telescope for their

16   own use and not for resale in Nevada during the period from January 1, 2005

17   through the present that was manufactured or sold by the Defendants or Co-

18   Conspirators, or any current or former affiliate thereof.

19   t.   **New Hampshire:** All persons and entities who indirectly purchased a

20   telescope for their own use and not for resale in New Hampshire during the

21   period from January 1, 2005 through the present that was manufactured or sold

22   by the Defendants or Co-Conspirators, or any current or former affiliate

23   thereof.

24   u.   **New Mexico:** All persons and entities who indirectly purchased a telescope for

25   their own use and not for resale in New Mexico during the period from January

26   1, 2005 through the present that was manufactured or sold by the Defendants

27   or Co-Conspirators, or any current or former affiliate thereof.

28

CLASS ACTION COMPLAINT

v. **New York:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in New York during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

w. **North Carolina:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in North Carolina during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

x. **North Dakota:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in North Dakota during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

y. **Oregon:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Oregon during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

z. **Rhode Island:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Rhode Island during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

aa. **South Carolina:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in South Carolina during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

bb. **South Dakota:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in South Dakota during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

CLASS ACTION COMPLAINT

cc. **Tennessee:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Tennessee during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

dd. **Utah:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Utah during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

ee. **Vermont:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Vermont during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

ff. **West Virginia:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in West Virginia during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

gg. **Wisconsin:** All persons and entities who indirectly purchased a telescope for their own use and not for resale in Wisconsin during the period from January 1, 2005 through the present that was manufactured or sold by the Defendants or Co-Conspirators, or any current or former affiliate thereof.

100. The Nationwide Injunctive class, Nationwide Damages Class, and the State Damages Classes are referred to herein as the "Classes" unless otherwise indicated. Excluded from the Classes are the Defendants and Co-Conspirators; their parent companies, subsidiaries and affiliates; any co-conspirators; federal government entities and instrumentalities of the federal government states and their subdivisions, agencies and instrumentalities; all judges assigned to this matter; all jurors in this matter; and all persons and entities who only purchased telescopes directly from Defendants or Co-Conspirators or for resale. Plaintiff reserves the right to amend

the aforementioned definitions if discovery and further investigation reveal that they should be expanded or otherwise modified.

101.   Numerosity:  While Plaintiff does not know the exact number of the members of the Classes, Plaintiff believes there are at least tens of thousands of members in each Class.

102.   Common Questions:  Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was applicable to all of the members of the Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

a.   Whether Defendants engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of telescopes sold in the United States;

b.   The identity of the participants of the alleged conspiracy;

c.   The duration of the alleged conspiracy and the acts carried out by Defendants in furtherance of the conspiracy;

d.   Whether the consumer telescope market is a relevant product market;

e.   Whether the United States is a relevant geographic market for consumer telescopes;

f.   Whether Defendants and their Co-Conspirators possess(ed) market or monopoly power in the consumer telescopes market;

g.   Whether Defendants and their Co-Conspirators agreed or combined to restrain competition and exclude competitors from the consumer telescopes market;

h.   Whether Defendants and their Co-Conspirators entered into concerted refusals to deal to foreclose competition and exclude competitors form the consumer telescopes market;

i.   Whether the alleged conspiracy violated the Sherman Act;

j.   Whether the alleged conspiracy violated California's Cartwright Act;

k.   Whether the alleged conspiracy violated California's Unfair Competition Law;

l.   Whether the alleged conspiracy violated various state antitrust and restraint of trade laws;

m.   Whether the alleged conspiracy violated various state consumer protection and unfair competition laws;

n.   Whether the conduct of Defendants, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

o.   The effect of the alleged conspiracy on the prices of telescopes sold in the United States during the Class Period;

p.   The appropriate injunctive and related equitable relief for the Nationwide Injunctive Class;

q.   The appropriate class-wide measure of damages for the Nationwide Damages Class; and

r.   The appropriate class-wide measure of damages for the State Damages Classes.

103.   <u>Typicality:</u>  Plaintiff's claims are typical claims of the members of the Classes, and Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiff and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for telescopes purchased indirectly from Defendants and Co-Conspirators.

104.   <u>Adequacy of Representation:</u>  Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust, consumer protection, and class action litigation.

105.   <u>Predominance:</u>  The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

CLASS ACTION COMPLAINT

106.  Superiority:  Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

107.  The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## EFFECTS OF THE CONSPIRACY AND ANTITRUST INJURY

108.  The effect of Defendants' conduct as described herein has been to:  (1) reduce the number of manufacturers for consumer telescopes and accessories; (2) eliminate new entrants into the consumer telescope market and push existing independent manufacturers and distributors out of the market; (3) restrain or eliminate price competition; and (4) artificially inflate the prices paid by Plaintiff and members of the Classes for telescopes.

109.  The full amount of such damages will be calculated after discovery and upon proof at trial.

110.  No procompetitive justification or effects outweigh the anticompetitive effects of Defendants' conduct.

111.  Plaintiff and members of the Classes are suited to pursuing antitrust claims against Defendants, insofar as they purchased telescopes during the Class Period, and thus were harmed by Defendants' anticompetitive conduct.

112.  As an intended, foreseeable, and proximate result of Defendants' unlawful conspiracy and acts in furtherance of their conspiracy, Plaintiff and members of the Classes have been injured in their business and property.  The injury to Plaintiff and Class Members is the type

the antitrust laws were designed to prevent and flows from Defendants' unlawful anticompetitive conduct.

## PLAINTIFF'S CLAIMS ARE TIMELY.

**A.     The Statute of Limitations Did Not Begin to Run Because Plaintiff Did Not and Could Not Discover His Claims.**

113.    Plaintiff repeats and re-alleges the allegations set forth above.

114.    Plaintiff and the members of the Classes had no knowledge of the combination or conspiracy alleged herein or of facts sufficient to place them on inquiry notice of the claims set forth herein until September 2019, when evidence of Defendants' conspiracy was first made public in the Orion Litigation.

115.    Plaintiff and members of the Classes are consumers who purchased telescopes not for resale. They had no direct contact or interaction with the Defendants and had no means from which they could have discovered the combination and conspiracy described in this complaint before September 2019.

116.    Plaintiff and members of the Classes did not have access to any information in the public domain about the combination or conspiracy alleged herein prior to September 2019 when evidence of Defendants' conspiracy was first made public in the Orion Litigation. Plaintiff and the members of the Classes had no way to obtain any facts or information concerning any aspect of the Defendants or their Co-Conspirators' dealings with competitors or direct purchasers, much less the fact that the Defendants and their Co-Conspirators had engaged in the combination and conspiracy alleged herein.

117.    Consequently, the statute of limitations as to Plaintiff and the Classes' claims did not begin to run until, at the earliest, September 2019.

**B.     Fraudulent Concealment Tolled the Statute of Limitations.**

118.    In the alternative, the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiff and the Classes. Plaintiff and the members of the Classes did not discover and could not through the exercise of reasonable diligence have

1   discovered the existence of the conspiracy alleged herein until September 2019 when evidence of

2   Defendants' conspiracy was first made public in the Orion Litigation.

3         119.   Because Defendants' agreements, understandings, and conspiracies were kept

4   secret until September 2019, Plaintiff and members of the Classes before that time were unaware

5   of Defendants' unlawful conduct, and they did not know before then that they were paying supra-

6   competitive prices for telescopes throughout the United States during the Class Period.

7         120.   The affirmative acts of the Defendants alleged herein were wrongfully concealed

8   and carried out in a manner that precluded detection.

9         121.   By its very nature, Defendants' anticompetitive conspiracy was inherently self-

10   concealing. Telescopes are not exempt from antitrust regulation, and thus, before September

11   2019, Plaintiff reasonably considered it to be a competitive industry. Accordingly, a reasonable

12   person under the circumstances would not have been alerted to begin to investigate the legitimacy

13   of Defendants' telescope prices before September 2019.

14         122.   Plaintiff and the members of the Classes could not have discovered the alleged

15   contract, conspiracy, or combination earlier than September 2019 through reasonable diligence

16   because of the deceptive practices and techniques of secrecy employed by Defendants and their

17   co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or

18   conspiracy.

19         123.   Because the alleged conspiracy was both self-concealing and affirmatively

20   concealed by Defendants and their Co-Conspirators, Plaintiff and members of the Class had no

21   knowledge of the alleged conspiracy, or of any facts or information that would have caused a

22   reasonably diligent person to investigate whether a conspiracy existed, until September 2019.

23         124.   As a result of Defendants' fraudulent concealment of their conspiracy, the running

24   of any statute of limitations has been tolled with respect to any claims that Plaintiff and members

25   of the Classes have alleged in this Complaint.

26

27

28

## CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF**
**Violations of Section 1 of the Sherman Act (15 U.S.C. § 1)**
**(on behalf of Plaintiff and the Nationwide Injunctive Class)**

125.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

126.    The Defendants, Co-Conspirators, and unnamed co-conspirators entered into and engaged in a contract, combination or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

127.    Beginning as early as January 1, 2005, the exact date being unknown to Plaintiff and exclusively within the knowledge of Defendants, Defendants and their Co-Conspirators entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of section 1 of the Sherman Act (15 U.S.C. § 1) by artificially reducing or eliminating competition in the United States.

128.    In particular, Defendants have combined and conspired to raise, fix, maintain, or stabilize the prices of telescopes.

129.    As a result of Defendants' unlawful conduct, prices for telescopes were raised, fixed, maintained, and stabilized in the United States.

130.    As a result of the Defendants' unlawful conduct, Plaintiff and other similarly situated indirect purchasers in the Nationwide Injunctive Class who purchased telescopes have been harmed by being forced to pay inflated, supracompetitive prices for telescopes.

131.    Plaintiff and members of the Nationwide Injunctive Class have been injured and will continue to be injured in their business and property by paying more for telescopes purchased indirectly from the Defendants and their Co-Conspirators than they would have paid and will pay in the absence of the conspiracy.

132.    The alleged contract, combination or conspiracy is a per se violation of the federal antitrust laws.

133.    These violations are continuing and will continue unless enjoined by this Court.

CLASS ACTION COMPLAINT

134.   Pursuant to section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiff and the Nationwide Injunctive Class seek the issuance of an injunction against Defendants, preventing and restraining the violations alleged herein.

**SECOND CLAIM FOR RELIEF**
**Violations of Section 2 of the Sherman Act (15 U.S.C. § 2)**
**Monopolization**
**(on behalf of Plaintiff and the Nationwide Injunctive Class)**

135.   Plaintiff incorporates by reference the allegations in the preceding paragraphs.

136.   The relevant market is the consumer telescope manufacturing market globally and distribution market in the United States.

137.   The Defendants and Co-Conspirators willfully acquired, maintained, and enhanced their monopoly power in both the manufacturing market and the distribution market through:

a.   Synta's acquisition of Celestron in 2005;

b.   Synta facilitating the acquisition of co-conspirator Meade by Ningbo Sunny in 2013, thereby eliminating Meade as a competitor manufacturer and distributor and increasing market concentration;

c.   Synta and Sunny agreeing to allocate the consumer telescope market such that Synta manufactures higher-end products and Ningbo Sunny manufactures lower-end products;

d.   Synta and Sunny agreeing not to bid on RFQs for each other's product offerings;

e.   Synta and Sunny exchanging their intellectual property and material, non-public information with each other, enabling them to coordinate prices and strategies;

f.   Synta and Sunny exchanging their competitors' (e.g., Orion's) intellectual property and material, non-public information with each other, enabling them to coordinate prices and strategies;

g.   Colluding to prevent Jinghua from acquiring co-conspirator Meade;

h.   Making false representations to the FTC regarding Synta's involvement in Sunny's acquisition of co-conspirator Meade; and

i.   Colluding to sabotage Orion's acquisition of the Hayneedle Assets.

138.   There is and was no legitimate, non-pretextual, procompetitive justification for Defendants' conduct that outweighs its harmful effects.  Even if there were some conceivable justification, the conduct is and was broader than necessary to achieve such a purpose.

139.   As a result of Defendants' illegal conduct, Plaintiffs and members of the Nationwide Injunctive Class were compelled to pay, and did pay, more than they would have for telescopes absent Defendants' illegal conduct.

140.   Plaintiff and members of the Nationwide Class have suffered irreparable harm and do not have an adequate remedy at law. Accordingly, Plaintiff and members of the Nationwide Class seek injunctive and equitable relief.

### THIRD CLAIM FOR RELIEF
**Violation of Section 2 of the Sherman Act (15 U.S.C. § 2)**
**Attempted Monopolization**
**(on behalf of Plaintiff and the Nationwide Injunctive Class)**

141.   Plaintiff incorporates by reference the allegations in the preceding paragraphs.

142.   The relevant market is the consumer telescope manufacturing market globally and distribution market in the United States.

143.   The Defendants and Co-Conspirators have attempted to monopolize both the manufacturing market and the distribution market and willfully engaged in predatory or anticompetitive conduct with the specific intent of monopolizing the consumer telescope market through:

a.   Synta's acquisition of Celestron in 2005;

b.   Synta facilitating the acquisition of co-conspirator Meade by Ningbo Sunny in 2013, thereby eliminating Meade as a competitor manufacturer and distributor and increasing market concentration;

c.   Synta and Sunny agreeing to allocate the consumer telescope market such that Synta manufactures higher-end products and Ningbo Sunny manufactures lower-end products;

d.   Synta and Sunny agreeing not to bid on RFQs for each other's product offerings;

e.   Synta and Sunny exchanging their intellectual property and material, non-public information with each other, enabling them to coordinate prices and strategies;

f.   Synta and Sunny exchanging their competitors' (e.g., Orion's) intellectual property and material, non-public information with each other, enabling them to coordinate prices and strategies;

g.   Colluding to prevent Jinghua from acquiring co-conspirator Meade;

h.   Making false representations to the FTC regarding Synta's involvement in Sunny's acquisition of co-conspirator Meade; and

i.   Colluding to sabotage Orion's acquisition of the Hayneedle Assets.

144.   The aforementioned anticompetitive conduct creates a dangerous probability that the Defendants will achieve monopoly power in the consumer telescope market.

145.   There is and was no legitimate, non-pretextual, procompetitive justification for Defendants' conduct that outweighs its harmful effects.  Even if there were some conceivable justification, the conduct is and was broader than necessary to achieve such a purpose.

146.   As a result of Defendants' illegal conduct, Plaintiffs and members of the Nationwide Injunctive Class were compelled to pay, and did pay, more than they would have for telescopes absent Defendants' illegal conduct.

147.   Plaintiff and members of the Nationwide Class have suffered irreparable harm and do not have an adequate remedy at law. Accordingly, Plaintiff and members of the Nationwide Class seek injunctive and equitable relief.

CLASS ACTION COMPLAINT

**FOURTH CLAIM FOR RELIEF**
**Violation of Section 7 of the Clayton Act (15 U.S.C. § 18)**
**(on behalf of Plaintiff and the Nationwide Injunctive Class)**

148.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

149.    Because Sunny's acquired co-conspirator Meade with Synta's help, Synta and Sunny were able to exercise market power in the consumer telescope manufacturing and distribution markets. The acquisition created the largest group of telescope manufacturers globally and telescope distributors in the United States. Both markets are highly concentrated and the acquisition further significantly increased market concentration.

150.    It is unlikely that entry into the market would remedy, in a timely manner, the anticompetitive effects from the acquisition of co-conspirator Meade by Sunny in 2013. Entry into the consumer telescope manufacturing and distribution markets is difficult and likely to take years because of the intellectual property needed to manufacture telescopes, the time required to plan for and to complete manufacturing facilities and the time required to plan for and establish the distribution channels.

151.    The mergers substantially lessened competition and/or tended to create a monopoly in the consumer telescope market in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, by:

    a.  Eliminating competition between Synta and Sunny in the consumer telescope manufacturing and distribution markets;

    b.  Making it easier for the merged entities to unilaterally raise prices of consumer telescopes;

    c.  Eliminating co-conspirator Meade as a substantial and independent competitor in the consumer telescope manufacturing and distribution market;

    d.  Reducing the range of product offerings by Defendants;

    e.  Increasing telescope prices to consumers; and

    f.  Reducing incentives to improve telescope quality in the relevant markets.

152.    The acquisition of co-conspirator Meade by Defendant Sunny has substantially lessened competition in the consumer telescope manufacturing and distribution markets in

CLASS ACTION COMPLAINT

violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, as well as decreased

telescope product options and increased telescope prices to consumers.

### FIFTH CLAIM FOR RELIEF
#### Violation of the State Antitrust Laws
**(on behalf of Plaintiff and the Damages Class or, Alternatively, on Behalf of the State Damages Classes)**

153.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

154.    During the Class Period, the Defendants and their Co-Conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of telescopes in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

155.    The contract, combination or conspiracy consisted of an agreement among the Defendants and its Co-Conspirators to fix, raise, inflate, stabilize and/or maintain at artificially supracompetitive levels prices for telescopes and to allocate products and customers in the United States.

156.    Defendants and their Co-Conspirators performed the following acts in furtherance of the combination and conspiracy:

      a.  Participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price telescopes at certain levels and otherwise to fix, increase, inflate, maintain or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to telescopes sold in the United States;

      b.  Allocating products and customers in the United States in furtherance of their agreements; and

      c.  Participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to and police the unlawful agreements they reached.

CLASS ACTION COMPLAINT

157.   The Defendants and their Co-Conspirators engaged in the aforementioned actions to effectuate their unlawful agreements to fix, maintain, increase or stabilize prices and to allocate products and customers.

158.   The Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

159.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes §§ 44-1401 *et seq.*

      a.   The Defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout Arizona; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

      b.   During the Class Period, the Defendants' illegal conduct substantially affected Arizona commerce.

      c.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

      d.   By reason of the foregoing, the Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401 *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401 *et seq.*

160.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code §§ 16700 *et seq.*

      a.   During the Class Period, the Defendants and their Co-Conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720 of the California

CLASS ACTION COMPLAINT

Business and Professions Code. The Defendants have acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of, and allocate markets for, telescopes at supracompetitive levels.

b. The aforesaid violations of Section 16720 of the California Business and Professions Code consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their Co-Conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for, telescopes.

c. For the purpose of forming and effectuating the unlawful trust, the Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: (1) fixing, raising, stabilizing and pegging the price of telescopes and (2) allocating among themselves the production of telescopes.

d. The combination and conspiracy alleged herein has had *inter alia* the following effects: (1) price competition in the sale of telescopes has been restrained, suppressed and/or eliminated in the State of California; (2) prices for telescopes sold by the Defendants and their Co-Conspirators have been fixed, raised, stabilized and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased telescopes directly or indirectly from the Defendants and their Co-Conspirators have been deprived of the benefit of free and open competition.

e. As a result and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property in that they paid more for telescopes than they otherwise would have paid in the absence of the Defendants' unlawful conduct. As a result of the Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiff and members of the Damages Class seek treble

CLASS ACTION COMPLAINT

1                  damages and their cost of suit, including a reasonable attorney's fee, pursuant

2                  to Section 16750(a) of the California Business and Professions Code.

3        161.     The Defendants have entered into an unlawful agreement in restraint of trade in

4 violation of Conn. Gen. Stat. § 35-26.

5              a.    Defendants made contracts or engaged in a combination or conspiracy with

6                  each other by maintaining, limiting or discontinuing the production,

7                  manufacture, sale or supply of telescopes for the purpose of, and having the

8                  desired effect of, fixing, controlling or maintaining prices for telescopes within

9                  the intrastate commerce of Connecticut.

10             b.    Class Members purchased telescopes within the State of Connecticut during

11                  the Class Period. But for Defendants' conduct set forth herein, the price of

12                  telescopes would have been lower by an amount to be determined at trial.

13             c.    Plaintiff and Class Members were injured with respect to purchases of

14                  telescopes in Connecticut and are entitled to all forms of relief including actual

15                  damages, treble damages, treble damages, reasonable attorneys' fees and costs,

16                  and injunctive relief.

17        162.     The Defendants have entered into an unlawful agreement in restraint of trade in

18 violation of the District of Columbia Code Annotated §§ 28-4501 *et seq.*

19             a.    The Defendants' combination or conspiracy had the following effects: (1)

20                  telescope price competition was restrained, suppressed and eliminated

21                  throughout the District of Columbia; (2) telescope prices were raised, fixed,

22                  maintained and stabilized at artificially high levels throughout the District of

23                  Columbia; (3) Plaintiff and members of the Damages Class were deprived of

24                  free and open competition; and (4) Plaintiff and members of the Damages

25                  Class paid supracompetitive, artificially inflated prices for telescopes.

26             b.    During the Class Period, the Defendants' illegal conduct substantially affected

27                  District of Columbia commerce.

28

c. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501 *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501 *et seq.*

163.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 ILCS 10/1, *et seq.*

a. Members of the Damages Class purchased telescopes within the State of Illinois during the Class Period. But for Defendants' conduct set forth herein, the price for telescopes would have been lower in an amount to be determined at trial.

b. Under the Illinois Antitrust Act, indirect purchases have standing to maintain an action for damages based on the facts alleged in this Complaint. 740 ILCS 10/7(2).

c. Defendants made contracts or engaged in a combination or conspiracy with each other, though they would have been competitors but for their prior agreement, for the purpose of fixing controlling or maintaining prices for telescopes sold and/or for allocating products and customers within the intrastate commerce of Illinois.

d. Defendants further unreasonably restrained trade or commerce and established, maintained or attempted to acquire monopoly power over the market for telescopes in Illinois for the purpose of excluding competition in violation of 740 ILCS 10/1 *et seq.*

164.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1 *et seq.*

a. The Defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout Iowa; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

b. During the Class Period, the Defendants' illegal conduct substantially affected Iowa commerce.

c. As a direct proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1 *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1 *et seq*.

165.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101 *et seq*.

a. The Defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout Kansas; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

b. During the Class Period, the Defendants' illegal conduct substantially affected Kansas commerce.

CLASS ACTION COMPLAINT

c.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101 *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101 *et seq.*

166.  The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101 *et seq.*

a.  The Defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout Maine; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

b.  During the Class Period, the Defendants' illegal conduct substantially affected Maine commerce.

c.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101 *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101 *et seq.*

167.  The Defendants have entered into an unlawful agreement in restraint of trade in violation of Michigan Compiled Laws Annotated §§ 445.771 *et seq.*

a. The Defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout Michigan; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

b. During the Class Period, the Defendants' illegal conduct substantially affected Michigan commerce.

c. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771 *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771 *et seq.*

168. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49 *et seq.*

a. The Defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout Minnesota; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

b. During the Class Period, the Defendants' illegal conduct substantially affected Minnesota commerce.

1       c.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff

2          and members of the Damages Class have been injured in their business and

3          property and are threatened with further injury.

4       d.  By reason of the foregoing, the Defendants have entered into agreements in

5          restraint of trade in violation of Minnesota Stat. §§ 325D.49 *et seq.*

6          Accordingly, Plaintiff and members of the Damages Class seek all relief

7          available under Minnesota Stat. §§ 325D.49 *et seq.*

8      169.  The Defendants have entered into an unlawful agreement in restraint of trade in

9   violation of the Mississippi Code Annotated §§ 75-21-1 *et seq.*

10      a.  The Defendants' combination or conspiracy had the following effects: (1)

11         telescope price competition was restrained, suppressed and eliminated

12         throughout Mississippi; (2) telescope prices were raised, fixed, maintained and

13         stabilized at artificially high levels throughout Mississippi; (3) Plaintiff and

14         members of the Damages Class were deprived of free and open competition;

15         and (4) Plaintiff and members of the Damages Class paid supracompetitive,

16         artificially inflated prices for telescopes.

17      b.  During the Class Period, the Defendants' illegal conduct substantially affected

18         Mississippi commerce.

19      c.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff

20         and members of the Damages Class have been injured in their business and

21         property and are threatened with further injury.

22      d.  By reason of the foregoing, the Defendants have entered into agreements in

23         restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1 *et seq.*

24         Accordingly, Plaintiff and members of the Damages Class seek all relief

25         available under Mississippi Code Ann. §§ 75-21-1 *et seq.*

26     170.  The Defendants have entered into an unlawful agreement in restraint of trade in

27  violation of the Nebraska Revised Statutes §§ 59-801 *et seq.*

28

                               CLASS ACTION COMPLAINT

a. The Defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout Nebraska; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

b. During the Class Period, the Defendants' illegal conduct substantially affected Nebraska commerce.

c. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801 *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801 *et seq.*

171. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010 *et seq.*

a. The Defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout Nevada; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

b. During the Class Period, the Defendants' illegal conduct substantially affected Nevada commerce.

c.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010 *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010 *et seq.*

172.  The Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1 *et seq.*

a.  The Defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout New Hampshire; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and members of the Damages Class were deprived of free and open competitions; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

b.  During the Class Period, the Defendants' illegal conduct substantially affected New Hampshire commerce.

c.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1 *et seq.*

173.  The Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1 *et seq.*

a. The Defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout New Mexico; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

b. During the Class Period, the Defendants' illegal conduct substantially affected New Mexico commerce.

c. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1 *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1 *et seq.*

174.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340 *et seq.*

a. The Defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout New York; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes when they purchased telescopes or purchased products that were otherwise of lower quality than they would have been absent the Defendants' and their Co-Conspirators' illegal acts or were

1        unable to purchase products that they otherwise would have purchased absent

2        the illegal conduct.

3        b.   During the Class Period, the Defendants' illegal conduct substantially affected

4             New York commerce.

5        c.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff

6             and members of the Damages Class have been injured in their business and

7             property and are threatened with further injury.

8        d.   By reason of the foregoing, the Defendants have entered into agreements in

9             restraint of trade in violation of the New York Donnelly Act §§ 340 *et seq.* The

10            conduct set forth above is a per se violation of the Act. Accordingly, Plaintiff

11            and members of the Damages Class seek all relief available under New York

12            Gen. Bus. Law §§ 340 *et seq.*

13   175.   The Defendants have entered into an unlawful agreement in restraint of trade in

14   violation of the North Carolina General Statutes §§ 75-1 *et seq.*

15        a.   The Defendants' combination or conspiracy had the following effects: (1)

16            telescope price competition was restrained, suppressed and eliminated

17            throughout North Carolina; (2) telescope prices were raised, fixed, maintained

18            and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff

19            and members of the Damages Class were deprived of free and open

20            competition; and (4) Plaintiff and members of the Damages Class paid

21            supracompetitive, artificially inflated prices for telescopes.

22        b.   During the Class Period, the Defendants' illegal conduct substantially affected

23             North Carolina commerce.

24        c.   As a direct and proximate result of the Defendants' unlawful conduct. Plaintiff

25             and members of the Damages Class have been injured in their business and

26             property and are threatened with further injury.

27        d.   By reason of the foregoing, the Defendants have entered into agreements in

28             restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1 *et seq.*

51                                          CLASS ACTION COMPLAINT

1      Accordingly, Plaintiff and members of the Damages Class seek all relief

2      available under North Carolina Gen. Stat. §§ 75-1 *et seq.*

3      176.   The Defendants have entered into an unlawful agreement in restraint of trade in

4  violation of the North Dakota Century Code §§ 51-08.1-01 *et seq.*

5      a.   The Defendants' combination or conspiracy had the following effects: (1)

6           telescope price competition was restrained, suppressed and eliminated

7           throughout North Dakota; (2) telescope prices were raised, fixed, maintained

8           and stabilized at artificially high levels throughout North Dakota; (3) Plaintiff

9           and members of the Damages Class were deprived of free and open

10          competition; and (4) Plaintiff and members of the Damages Class paid

11          supracompetitive, artificially inflated prices for telescopes.

12     b.   During the Class Period, the Defendants' illegal conduct had a substantial

13          effect on North Dakota commerce.

14     c.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff

15          and members of the Damages class have been injured in their business and

16          property and are threatened with further injury.

17     d.   By reason of the foregoing, the Defendants have entered into agreements in

18          restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01 *et seq.*

19          Accordingly, Plaintiff and members of the Damages Class seek all relief

20          available under North Dakota Cent. Code §§ 51-08.1-01 *et seq.*

21     177.   The Defendants have entered into an unlawful agreement in restraint of trade in

22  violation of the Oregon Revised Statutes §§ 646.705 *et seq.*

23     a.   The Defendants' combination or conspiracy had the following effects: (1)

24          telescope price competition was restrained, suppressed and eliminated

25          throughout Oregon; (2) telescope prices were raised, fixed, maintained and

26          stabilized at artificially high levels throughout Oregon; (3) Plaintiff and

27          members of the Damages Class were deprived of free and open competition;

28

52                                        CLASS ACTION COMPLAINT

and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

b. During the Class Period, the Defendants' illegal conduct had a substantial effect on Oregon commerce.

c. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the following, the Defendants have entered into agreements in restraint of trade in violation of the Oregon Revised States §§ 646.705 *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705 *et seq.*

178. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1 *et seq.*

a. The Defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout South Dakota; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

b. During the Class Period, the Defendants' illegal conduct had a substantial effect on South Dakota commerce.

c. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1 *et*

*seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1 *et seq.*

179.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101 *et seq.*

    a.   The Defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout Tennessee; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

    b.   During the Class Period, the Defendants' illegal conduct had a substantial effect on Tennessee commerce.

    c.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d.   By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101 *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101 *et seq.*

180.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code annotated §§ 76-10-3101 *et seq.*

    a.   The Defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout Utah; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4)

1               Plaintiff and members of the Damages Class paid supra-competitive,

2               artificially inflated prices for telescopes.

3        b.  During the Class Period, the Defendants' illegal conduct had a substantial

4               effect on Utah commerce.

5        c.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff

6               and members of the Damages Class have been injured in their business and

7               property and are threatened with further injury.

8        d.  By reason of the foregoing, the Defendants have entered into agreements in

9               restraint of trade in violation of Utah Code Annotated §§ 76-10-3101 *et seq*.

10              Accordingly, Plaintiff and members of the Damages Class seek all relief

11              available under Utah Code Annotated §§ 76-10-3101 *et seq.*

12    181.    The Defendants have entered into an unlawful agreement in restraint of trade in

13  violation of Vermont Stat. Ann. 9 §§ 2453 *et seq.*

14        a.  The Defendants' combination or conspiracy had the following effects: (1)

15              telescope price competition was restrained, suppressed and eliminated

16              throughout Vermont; (2) telescope prices were raised, fixed, maintained and

17              stabilized at artificially high levels throughout Vermont; (3) Plaintiff and

18              members of the Damages Class were deprived of free and open competition;

19              and (4) Plaintiff and members of the Damages Class paid supracompetitive,

20              artificially inflated prices for telescopes.

21        b.  During the Class Period, the Defendants' illegal conduct had a substantial

22              effect on Vermont commerce.

23        c.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff

24              and members of the Damages Class have been injured in their business and

25              property and are threatened with further injury.

26        d.  By reason of the foregoing, the Defendants have entered into agreements in

27              restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453 *et seq.*

28

               CLASS ACTION COMPLAINT

1     Accordingly, Plaintiff and members of the Damages Class seek all relief
2     available under Vermont Stat. Ann. 9 §§ 2453 *et seq.*

3     182.   The Defendants have entered into an unlawful agreement in restraint of trade in
4     violation of the West Virginia Code §§ 47-18-1 *et seq.*

5     a.   The Defendants' combination or conspiracy had the following effects: (1)
6          telescope price competition was restrained, suppressed and eliminated
7          throughout West Virginia; (2) telescope prices were raised, fixed, maintained
8          and stabilized at artificially high levels throughout West Virginia; (3) Plaintiff
9          and members of the Damages Class were deprived of free and open
10         competition; and (4) Plaintiff and members of the Damages Class paid
11         supracompetitive, artificially inflated prices for telescopes.

12    b.   During the Class Period, the Defendants' illegal conduct had a substantial
13         effect on West Virginia commerce.

14    c.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff
15         and members of the Damages Class have been injured in their business and
16         property and are threatened with further injury.

17    d.   By reason of the foregoing, the Defendants have entered into agreement sin
18         restraint of trade in violation of West Virginia Code §§ 47-18-1 *et seq.*
19         Accordingly, Plaintiff and members of the Damages Class seek all relief
20         available under West Virginia Code §§ 47-18-1 *et seq.*

21    183.   The Defendants have entered into an unlawful agreement in restraint of trade in
22    violation of Wisconsin Statutes §§ 133.01 *et seq.*

23    a.   The Defendants' combination or conspiracy had the following effects: (1)
24         telescope price competition was restrained, suppressed and eliminated
25         throughout Wisconsin; (2) telescope prices were raised, fixed, maintained and
26         stabilized at artificially high levels throughout Wisconsin; (3) Plaintiff and
27         members of the Damages Class were deprived of free and open competition;

28

CLASS ACTION COMPLAINT

and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

b. During the Class Period, the Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

c. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, the Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01 *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01 *et seq.*

184. Plaintiff and members of the Damages Class in each of the above states have been injured in their business and property by reason of the Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiff and members of the Damages Class have paid more for telescopes than they otherwise would have paid in the absence of the Defendants' unlawful conduct. This injury is the type the antitrust laws of the above states were designed to prevent and flows from that which makes the Defendants' conduct unlawful.

185. In addition, the Defendants have profited significantly from the aforesaid conspiracy. The Defendants' profits derived from its anticompetitive conduct come at the expense and detriment of the Plaintiff and the members of the Damages Class.

186. Accordingly, Plaintiff and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable) to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

**SIXITH CLAIM FOR RELIEF**
**Violations of State Consumer Protection Laws**
**(on behalf of Plaintiff and the Damages Class or, Alternatively, on Behalf of the State Damages Classes)**

187. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

188.    The Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

189.    The Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated § 4-88-101 *et seq.*

      a.   The Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which telescopes were sold, distributed or obtained in Arkansas and took efforts to conceal its agreements from Plaintiff and members of the Damages Class.

      b.   The aforementioned conduct on the part of the Defendants constituted unconscionable and deceptive acts or practices in violations of Arkansas Code Annotated § 4-88-107(a)(10).

      c.   The Defendants' unlawful conduct had the following effects: (1) price competition in the telescope market was restrained, suppressed and eliminated throughout Arkansas; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arkansas; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

      d.   During the Class Period, the Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

      e.   As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

      f.   The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violations of Arkansas Code Annotated § 4-88-107(a)(10) and,

1    accordingly, Plaintiff and the Damages Class seek all relief available under

2    that statute.

3    190.    The Defendants have engaged in unfair competition or unfair, unconscionable,

4    deceptive or fraudulent acts or practices in violation of California Business and Professions Code

5    § 17200 *et seq.*

6    a.    During the Class Period, the Defendants marketed, sold or distributed

7    telescopes in California and committed and continued to commit acts of unfair

8    competition as defined by Sections 17200 *et seq*. of the California Business

9    and Professions Code by engaging in acts and practices specified above.

10   b.    This claim is instituted pursuant to Sections 17203 and 17204 of the California

11   Business and Professions Code to obtain restitution from the Defendants for

12   acts, as alleged herein, that violated Section 17200 of the California Business

13   and Professions Code, commonly known as the Unfair Competition Law.

14   c.    The Defendants' conduct as alleged herein violated Section 17200. The acts,

15   omissions, misrepresentations, practices and non-disclosures of the

16   Defendants, as alleged herein, constitute a common, continuous and continuing

17   course of conduct of unfair, unlawful and/or fraudulent business acts or

18   practices within the meaning of California Business and Professions Code

19   § 172000 *et seq*. including, but not limited to, the following: (1) the violations

20   of Section 1 of the Sherman Act as set forth above; (2) the violations of

21   Section 2 of the Sherman Act as set forth above; and (3) the violations of

22   Section 16720 *et seq*. of the California Business and Professions Code set forth

23   above.

24   d.    The Defendants' acts, omissions, misrepresentations, practices and

25   nondisclosures described above, whether or not in violation of Section 16720

26   *et seq*. of the California Business and Professions Code and whether or not

27   concerted or independent acts, are otherwise unfair, unconscionable, unlawful

28   or fraudulent.

59                          CLASS ACTION COMPLAINT

e. The Defendants' acts or practices are unfair to purchasers of telescopes in the State of California within the meaning of Section 17200 of the California Business and Professions Code.

f. The Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 172000 of the California Business and Professions Code.

g. Plaintiff and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by the Defendants as a result of such business acts or practices.

h. The illegal conduct alleged herein is continuing, and there is no indication that the Defendants will not continue such activity in the future.

i. The unlawful and unfair business practices of the Defendants have caused and continue to cause Plaintiff and members of the Damages Class to pay supracompetitive and artificially inflated prices for telescopes. Plaintiff and members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

j. The conduct of the Defendants as alleged in this complaint violates Section 17200 of the California Business and Professions Code.

k. As alleged in this Complaint, the Defendants and their Co-Conspirators have been unjustly enriched as a result of their wrongful conduct and by the Defendants' unfair competition. Plaintiff and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by the Defendants as a result of such business practices pursuant to the California Business and Professions Code §§ 17203, 17204.

191. The Defendants have engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation of District of Columbia Code § 28-3901 *et seq.*

a. The Defendants agreed to, and did in fact, act in restraint of trade of commerce by affecting, fixing, controlling and/or maintaining at artificial and/or non-competitive levels the prices at which telescopes were sold, distributed or obtained in the District of Columbia.

b. The foregoing conduct constitutes "unlawful trade practices" within the meaning of D.C. Code § 28-3904. Plaintiff was not aware of the Defendants' price-fixing conspiracy and was therefore unaware that he was being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by the Defendants for telescopes. The Defendants had the sole power to set that price, and Plaintiff had no power to negotiate a lower price. Moreover, Plaintiff lacked any meaningful choice in purchasing telescopes because he was unaware of the unlawful overcharges and there was no alternative source of supply throughout which Plaintiff could avoid the overcharges. The Defendants' conduct with regard to sales of telescopes, including its illegal conspiracy to secretly fix the price of telescopes of supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited the Defendants at the expense of Plaintiff and the public. The Defendants took grossly unfair advantage of Plaintiff. The suppression of competition that has resulted from the Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for telescopes.

c. The Defendants' unlawful conduct had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout the District of Columbia; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and the Damages Class were deprived of free and open competition;

and (4) Plaintiff and the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

    d.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901 *et seq.* and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

192.    The Defendants have engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*

    a.  The Defendants' unlawful conduct had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout Florida; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high prices throughout Florida; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

    b.  During the Class Period, the Defendants' illegal conduct substantially affected Florida commerce and consumers.

    c.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

    d.  The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201 *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under the statute.

193. The Defendants have engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1 *et seq.*

a. The Defendants' unlawful conduct had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout Hawaii; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

b. During the Class Period, the Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

c. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with future injury.

d. The Defendants have engaged in unfair competition or unfair and deceptive acts or practices in violation of Hawaii Rev. Stat. § 480 *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

194. The Defendants have engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation of Mass. G.L. c. 93A, § 2.

a. The Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

b. The Defendants agreed to and did in fact act in restraint of trade or commerce in a market which includes Massachusetts by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels the prices at which telescopes were sold, distributed or obtained in Massachusetts and took efforts to conceal its agreements from Plaintiff and members of the Damages Class.

c. The Defendants' unlawful conduct had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout

CLASS ACTION COMPLAINT

Massachusetts; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

d.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class were injured and are threatened with further injury.

e.  The Defendants have been or will be serviced with a demand letter in accordance with G.L. c. 93A § 9 or, upon information and belief, such service of a demand letter was unnecessary due to the Defendants not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth. More than thirty days has passed since such demand letters were served, and each of the Defendants has failed to make a reasonable settlement offer.

f.  By reason of the foregoing, the Defendants engaged in unfair competition and unfair or deceptive acts or practices in violation of G.L. c. 93A § 2. The Defendants and their Co-Conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiff and members of the Damages Class to multiple damages.

195.  The Defendants have engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*

a.  Plaintiff and the Damages Class purchased telescopes for personal, family or household purposes.

b.  The Defendants engaged in the conduct described herein in connection with the sale of telescopes in trade or commerce in a market that includes Missouri.

CLASS ACTION COMPLAINT

c.  The Defendants agreed to and did in fact affect, fix, control and/or maintain at artificial and non-competitive levels the price at which telescopes were sold, distributed or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

d.  The Defendants concealed, suppressed and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning its unlawful activities and artificially inflated prices for telescopes. It concealed, suppressed and omitted facts that would have been important to Plaintiff and members of the Damages Class as they related to the cost of telescopes they purchased.

e.  The Defendants misrepresented the real cause of price increases and/or the absence of price reductions in telescopes by making public statements that were not in accord with the facts.

f.  The Defendants' statements and conduct concerning the price of telescopes were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing telescopes at prices established by a free and fair market.

g.  The Defendants' unlawful conduct had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout Missouri; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Missouri; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

h.  The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

CLASS ACTION COMPLAINT

i.  As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property.

j.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Sat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false premise, misrepresentation, unfair practice or the concealment, suppression or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce, . . ." as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010 *et seq.*, 15 CSR 60-8.010 *et seq.*, 15 CSR 60-9.010 *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

196.  The Defendants have engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont. Code §§ 30-14-101 *et seq.*

a.  The Defendants' unlawful conduct had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout Montana; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Montana; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

b.  During the Class Period, the Defendants' illegal conduct substantially affected Montana commerce and consumers.

c.  As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

CLASS ACTION COMPLAINT

1            d.  The Defendant have engaged in unfair competition or unfair or deceptive acts

2               or practices in violation of Mont. Code §§ 30-14-101 *et seq.*, and, accordingly,

3               Plaintiff and members of the Damages Class seek all relief available under that

4               statute.

5      197.   The Defendants have engaged in unfair competition or unfair, unconscionable or

6 deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1 *et seq.*

7            a.  The Defendants agreed to and did in fact act in restraint of trade or commerce

8               by affecting, fixing, controlling and/or maintaining at non-competitive and

9               artificially inflated levels the prices at which telescopes were sold, distributed

10              or obtained in New Mexico and took efforts to conceal its agreements from

11              Plaintiff and members of the Damages Class.

12           b.  The aforementioned conduct on the part of the Defendants constituted

13              "unconscionable trade practices" in violation of N.M.S.A. Stat. § 57-12-3 in

14              that such conduct *inter alia* resulted in a gross disparity between the value

15              received by Plaintiff and the members of the Damages Class and the prices

16              paid by them for telescopes as set forth in N.MS.A. § 57-12-2E. Plaintiff were

17              not aware of the Defendants' price fixing conspiracy and were therefore

18              unaware that they were being unfairly and illegally overcharged. There was a

19              gross disparity of bargaining power between parties with respect to the prices

20              charged by the Defendants for telescopes. The Defendants had the sole power

21              to set that price and Plaintiff had no power to negotiate a lower price.

22              Moreover, Plaintiff lacked any meaningful choice on purchasing telescopes

23              because they were unaware of the unlawful overcharge and there was no

24              alternative source of supply through which Plaintiff could avoid the

25              overcharges. The Defendants' conduct with regard to sales of telescopes,

26              including its illegal conspiracy to secretly fix the price of telescopes at

27              supracompetitive levels and overcharge consumers, was substantially

28              unconscionable because it was one-sided and unfairly benefited the Defendants

1    at the expense of Plaintiff and the public. The Defendants took grossly unfair

2    advantage of Plaintiff. The suppression of competition that resulted from the

3    Defendants' conspiracy has ultimately resulted in unconscionably higher prices

4    for consumers so that there was a gross disparity between the price paid and

5    the value received for telescopes.

6    c.  The Defendants' unlawful conduct had the following effects: (1) telescope

7    price competition was restrained, suppressed and eliminated throughout New

8    Mexico; (2) telescope prices were raised, fixed, maintained and stabilized at

9    artificially high levels throughout New Mexico; (3) Plaintiff and the members

10    of the Damages Class were deprived of free and open competition; and (4)

11    Plaintiff and the members of the Damages Class paid supracompetitive,

12    artificially inflated prices for telescopes.

13    d.  During the Class Period, the Defendants' illegal conduct substantially affected

14    New Mexico commerce and consumers.

15    e.  As a direct and proximate result of the unlawful conduct of the Defendants,

16    Plaintiff and members of the Damages Class have been injured and are

17    threatened with further injury.

18    f.  The Defendants have engaged in unfair competition or unfair or deceptive acts

19    or practices in violation of New Mexico Stat. § 57-12-1 *et seq*., and,

20    accordingly, Plaintiff and members of the Damages Class seek all relief

21    available under that statute.

22    198.  The Defendants engaged in unfair competition or unfair, unconscionable or

23  deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349 *et seq.*

24    a.  The Defendants agreed to and did in fact act in restraint of trade or commerce

25    by affecting, fixing, controlling and/or maintaining at artificial and non-

26    competitive levels the prices at which telescopes were sold, distributed or

27    obtained in New York and took efforts to conceal its agreements from Plaintiff

28    and the Damages Class.

        CLASS ACTION COMPLAINT

b. The Defendants and their Co-Conspirators made public statements about the prices of telescopes and products containing telescopes that the Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for telescopes and products containing telescopes; and the Defendants alone possessed material information that was relevant to consumers but failed to provide the information.

c. Because of the Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased telescopes were misled to believe that they were paying a fair price for telescopes or the price increase for telescopes were for valid business reasons, and similarly situated consumers were potentially affected by the Defendants' conspiracy.

d. The Defendants knew that their unlawful trade practices with respect to pricing telescopes would have an impact on New York consumers and not just the Defendants' direct customers.

e. The Defendants knew that their unlawful trade practices with respect to pricing telescopes would have a broad impact, causing consumer class members who indirectly purchased telescopes to be injured by paying more for telescopes than they would have paid in the absence of the Defendants' unlawful trade acts and practices.

f. The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

g. The Defendants' unlawful conduct had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout New

1  York; (2) telescope prices were raised, fixed, maintained and stabilized at

2  artificially high levels throughout New York; (3) Plaintiff and members of the

3  Damages Class were deprived of free and open competition; and (4) Plaintiff

4  and members of the Damages Class paid supra competitive, artificially inflated

5  prices for telescopes.

6  h.  During the Class Period, the Defendants marketed, sold or distributed

7  telescopes in New York, and the Defendants' illegal conduct substantially

8  affected New York commerce and consumers.

9  i.  During the Class Period, each of the Defendants named herein, directly or

10  indirectly and through affiliates they dominated and controlled, manufactured,

11  sold and/or distributed telescopes in New York.

12  j.  Plaintiff and members of the Damages Class seek all relief available pursuant

13  to N.Y. Gen. Bus. Law. § 349(h).

14  199.  The Defendants have engaged in unfair competition or unfair, unconscionable or

15  deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1 *et seq.*

16  a.  The Defendants agreed to and did in fact act in restraint of trade or commerce

17  by affecting, fixing, controlling and/or maintaining at artificial and non-

18  competitive levels the prices at which telescopes were sold, distributed or

19  obtained in North Carolina and took efforts to conceal its agreements from

20  Plaintiff and members of the Damages Class.

21  b.  The Defendants' price-fixing conspiracy could not have succeeded absent

22  deceptive conduct by the Defendants to cover up their illegal acts. Secrecy was

23  integral to the formation, implementation and maintenance of the Defendants'

24  price-fixing conspiracy. The Defendants committed inherently deceptive and

25  self-concealing actions of which Plaintiff could not possibly have been aware.

26  The Defendants and their Co-Conspirators publicly provided pretextual and

27  false justifications regarding their price increases. The Defendants' public

28  statements concerning the price of telescopes created the illusion of

CLASS ACTION COMPLAINT

competitive pricing controlled by market forces rather than supracompetitive pricing driven by the Defendants' illegal conspiracy. Moreover, the Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

c.   The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law which resulted in consumer injury and broad adverse impact on the public at large and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

d.   The Defendants' unlawful conduct had the following effects: (1) telescope price competition was restrained, suppressed and eliminated throughout North Carolina; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

e.   During the Class Period, the Defendants marketed, sold or distributed telescopes in North Carolina, and the Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

f.   During the Class Period, the Defendants, directly or directly through affiliates they dominated and controlled, manufactured, sold and/or distributed telescopes in North Carolina.

g.   Plaintiff and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial, and they are threatened with further injury. The Defendants have engaged in unfair

1    competition or unfair or deceptive acts or practices in violation of North

2    Carolina Gen. Stat. § 75-1.1 *et seq.*, and, accordingly, Plaintiff and members of

3    the Damages Class seek all relief available under that statute.

4        200.    The Defendants have engaged in unfair competition or unfair, unconscionable or

5    deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer

6    Protection Act, R.I. Gen. Laws §§ 6-13.1-1 *et seq.*

7        a.   Plaintiff and members of the Damages Classes purchased telescopes for

8            personal, family or household purposes.

9        b.   The Defendants agreed to and did in fact act in restraint of trade or commerce

10           in a market that includes Rhode Island by affecting, fixing, controlling and/or

11           maintaining at artificial and non-competitive levels the prices at which

12           telescopes were sold, distributed or obtained in Rhode Island.

13       c.   The Defendants deliberately failed to disclose material facts to Plaintiff and

14           members of the Damages Class concerning its unlawful activities and

15           artificially inflated prices for telescopes. The Defendants owed a duty to

16           disclose such facts, and, considering the relative lack of sophistication of the

17           average, non-business consumer, it breached that duty by its silence. The

18           Defendants misrepresented to all consumer during the Class Period that its

19           telescope prices were competitive and fair.

20       d.   The Defendants' unlawful conduct had the following effects: (1) telescope

21           price competition was restrained, suppressed and eliminated throughout Rhode

22           Island; (2) telescope prices were raised, fixed, maintained and stabilized at

23           artificially high levels throughout Rhode Island; (3) Plaintiff and members of

24           the Damages Class were deprived of free and open competition; and (4)

25           Plaintiff and members of the Damages Class paid supracompetitive, artificially

26           inflated prices for telescopes.

27       e.   As a direct and proximate result of the Defendants' violations of law, Plaintiff

28           and members of the Damages Class suffered an ascertainable loss of money or

1          property as a result of the Defendants' use or employment of unconscionable

2          and deceptive commercial practices as set forth above. That loss was caused by

3          the Defendants' willful and deceptive conduct as described herein.

4        f.   The Defendants' deception, including its affirmative misrepresentations and

5          omissions concerning the price of telescopes, likely misled all consumers

6          acting reasonably under the circumstances to believe that they were purchasing

7          telescopes at prices set by a free and fair market. The Defendants' affirmative

8          misrepresentations and omissions constitute information important to Plaintiff

9          and members of the Damages Class as they related to the cost of telescopes

10          they purchased. The Defendants have engaged in unfair competition or unfair

11          or deceptive acts or practices in violation of Rhode Island Gen. Laws § 6-13.1-

12          1 *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek

13          all relief available under that statute.

14     201.   The Defendants have engaged in unfair competition or unfair, unconscionable or

15  deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code

16  Ann. §§ 39-5-10 *et seq.*

17        a.   The Defendants' combination of conspiracy had the following effects: (1)

18          telescope price competition was restrained, suppressed and eliminated

19          throughout South Carolina; (2) telescope prices were raised, fixed, maintained

20          and stabilized at artificially high levels throughout South Carolina; (3) Plaintiff

21          and members of the Damages Class were deprived of free and open

22          competition; and (4) Plaintiff and members of the Damages Class paid

23          supracompetitive, artificially inflated prices for telescopes.

24        b.   During the Class Period, the Defendants' illegal conduct had a substantial

25          effect on South Carolina commerce.

26        c.   As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff

27          and members of the Damages Class have been injured in their business and

28          property and are threatened with further injury.

          CLASS ACTION COMPLAINT

1         d.  The Defendants have engaged in unfair competition or unfair or deceptive acts

2             or practices in violation of S.C. Code Ann. §§ 39-5-10 *et seq.*, and,

3             accordingly, Plaintiff and the members of the Damages Class seek all relief

4             available under that statute.

5      202.    The Defendants have engaged in unfair competition or unfair, unconscionable or

6  deceptive acts or practices in violation of 9 Vermont § 2451 *et seq.*

7         a.  Defendants agreed to and did in fact act in restraint of trade or commerce in a

8             market that includes Vermont by affecting, fixing, controlling and/or

9             maintaining at artificial and non-competitive levels the prices at which

10            telescopes were sold, distributed or obtained in Vermont.

11        b.  The Defendants deliberately failed to disclose material facts to Plaintiff and

12            members of the Damages Class concerning its unlawful activities and

13            artificially inflated prices for telescopes. The Defendants owed a duty to

14            disclose such facts, and, considering the relative lack of sophistication of the

15            average, non-business consumer, the Defendants breached that duty by its

16            silence. The Defendants misrepresented to all consumers during the Class

17            Period that its telescope prices were competitive and fair.

18        c.  The Defendants' unlawful conduct had the following effects: (1) telescope

19            price competition was restrained, suppressed and eliminated throughout

20            Vermont; (2) telescope prices were raised, fixed, maintained and stabilized at

21            artificially high levels throughout Vermont; (3) Plaintiff and members of the

22            Damages Class were deprived of free and open competition; and (4) Plaintiff

23            and members of the Damages Class paid supracompetitive, artificially inflated

24            prices for telescopes.

25        d.  As a direct and proximate result of the Defendants' violations of law, Plaintiff

26            and members of the Damages Class suffered an ascertainable loss of money or

27            property as a result of the Defendants' use or employment of unconscionable

28

1          and deceptive commercial practices as set forth above. That loss was caused by

2          the Defendants' willful and deceptive conduct as described herein.

3      e.  The Defendants' deception, including its affirmative misrepresentations and

4          omissions concerning the prices of telescopes, likely misled all purchasers

5          acting reasonably under the circumstances to believe that they were purchasing

6          telescopes at prices set by a free and fair market. The Defendants' misleading

7          conduct and unconscionable activities constitute unfair competition or unfair or

8          deceptive acts or practices in violation of 9 Vermont § 2453 *et seq.*, and,

9          accordingly, Plaintiff and members of the Damages Class seek all relief

10         available under that statute.

11 **SEVENTH CLAIM FOR RELIEF**
**Unjust Enrichment**

12 **(on behalf of Plaintiff and the Damages Class or, Alternatively, on Behalf of the State**
**Damages Classes)**

13

14     203.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

15     204.    Plaintiff brings this claim under the laws of each of the Indirect Purchaser States.

16     205.    As a result of its unlawful conduct described above, the Defendants have and will

17 continue to be unjustly enriched. The Defendants have been unjustly enriched by the receipt of, at

18 a minimum, unlawfully inflated prices and unlawful profits on sales of telescopes.

19     206.    The Defendants have benefited from its unlawful acts, and it would be inequitable

20 for the Defendants to be permitted to retain any of the ill-gotten gains resulting from the

21 overpayments made by Plaintiff and by the members of the Damages Class for telescopes.

22     207.    Plaintiff and the members of the Damages Class are entitled to the amount of the

23 Defendants' ill-gotten gains resulting from its unlawful, unjust and inequitable conduct. Plaintiff

24 and the members of the Damages Class are entitled to the establishment of a constructive trust

25 consisting of all ill-gotten gains from which Plaintiff and the members of the Damages Class may

26 make claims on a pro rata basis.

27

28

CLASS ACTION COMPLAINT

208.   Pursuit of any remedies against the firms from which Plaintiff and the members of the Damages Class purchased telescopes subject to the Defendants' conspiracy would have been futile.

**PRAYER FOR RELIEF**

209.   WHEREFORE, Plaintiff and members of the Classes pray for relief as set forth below:

210.   Certification of the action as a class action pursuant to Federal Rule of Civil Procedure 23, and appointment of Plaintiff as a Class Representative and their counsel of record as Class Counsel;

211.   A declaration that Defendants' conduct constituted an unlawful restraint of trade in violation of the federal and state statutes alleged herein and that Defendants are liable for the conduct or damage inflicted by any other co-conspirator.

212.   Restitution and/or damages to Class members for their purchases of telescopes at inflated prices;

213.   Damages to the maximum extent allowed as provided by the statutes cited herein;

214.   Pre-judgment and post-judgment interest on such monetary relief;

215.   Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendants as a result of the anticompetitive conduct alleged herein;

216.   An injunction against Defendants, their affiliates, successors, transferees, assignees, and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect.

217.   The costs of bringing this suit, including reasonable attorneys' fees; and

218.   All other relief to which Plaintiffs and members of the Classes may be entitled at law or in equity.

CLASS ACTION COMPLAINT

1

## JURY DEMAND

2          Pursuant to Federal Rule of Civil Procedure 38, Plaintiff, on behalf of himself and the

3    proposed Classes, demands a trial by jury on all issues so triable.

4

5    Dated:       July 20, 2020                    Respectfully submitted,

6                                          By:       /s/ *Lin Y. Chan*

7
                                                  Eric B. Fastiff (SBN 182260)
8                                                 efastiff@lchb.com
                                                  Lin Y. Chan (SBN 255027)
9                                                 lchan@lchb.com
                                                  **LIEFF CABRASER HEIMANN &**
10                                                 **BERNSTEIN LLP**
                                                  275 Battery Street, 29th Floor
11                                                San Francisco, California 94111
                                                  Telephone: (415) 956-1000
12                                                Facsimile: (415) 956-1008

13
                                                  Dan Drachler (*pro hac vice* forthcoming)
14                                                ddrachler@zsz.com
                                                  **ZWERLING, SCHACHTER**
15                                                 **& ZWERLING, LLP**
                                                  1904 Third Avenue, Suite 1030
16                                                Seattle, Washington 98101
                                                  Telephone: (206) 223-2053
17                                                Facsimile: (206) 343-9636

18
19                                                        -and-

20                                                Robert S. Schachter (*pro hac vice* forthcoming)
                                                  rschachter@zsz.com
21                                                Ryan Weller (*pro hac vice* forthcoming)
                                                  rweller@zsz.com
22                                                **ZWERLING, SCHACHTER**
                                                   **& ZWERLING, LLP**
23                                                41 Madison Avenue, 32nd Floor
24                                                New York, New York 10010
                                                  Telephone: (212) 223-3900
25                                                Facsimile: (212) 371-5969

26

27                                                *Attorney for Plaintiff Norman Goldblatt and the*
                                                  *Proposed Class*
28